# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 11, 2014

Lyle W. Cayce
Clerk

No. 12-40264

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

LUCIANO PASCACIO-RODRIGUEZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, DENNIS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Luciano Pascacio-Rodriguez was convicted under 8 U.S.C. § 1326(a) and (b) as an alien unlawfully present in the United States following deportation. He appeals his sentence of 70 months of imprisonment, contending that the district court erred in concluding that his prior state-court conviction for conspiracy to commit murder warranted a 16-level enhancement under § 2L1.2 of the Sentencing Guidelines. Pascacio-Rodriguez asserts that the Nevada statute under which he was convicted did not require proof of an overt act in furtherance of the conspiracy; the generic, contemporary meaning of "conspiracy" requires an overt act; as used in the Guidelines, "conspiracy" refers to the

generic, contemporary meaning of that term; and, therefore, his prior state-court conviction does not constitute a "crime of violence" under the Guidelines.

We conclude that the Guidelines do not require an overt act as an element of conspiracy to commit murder. The district court did not err in imposing the 16-level enhancement, and we affirm.

## I

Pascacio-Rodriguez pleaded guilty to violating 8 U.S.C. § 1326(a) and (b) for being unlawfully present in the United States following his deportation. Only his sentence is at issue in this appeal.

Pascacio-Rodriguez had been convicted of conspiracy to commit murder under Nevada state law prior to the time that he was removed from the United States. The Presentence Investigation Report (PSR) recommended a 16-level enhancement under § 2L1.2(b)(1)(A) of the Sentencing Guidelines based on that 2003 Nevada offense. Pascacio-Rodriguez objected, contending that the Nevada statute under which he was convicted did not require proof of an overt act in furtherance of the conspiracy and therefore that the Nevada conspiracy offense was "broader than the contemporary generic definition of 'conspiracy.'"

The district court overruled Pascacio-Rodriguez's objection, noting that a number of *federal* conspiracy statutes do not require an overt act and concluding that the overt-act requirement was not "an important vital part of the generic definition of 'conspiracy.'" The district court calculated a total offense level of 21 and a criminal history category of VI, but it reduced the criminal history category by one level because the district court concluded that Pascacio-Rodriguez's criminal history had been overrepresented. The corresponding advisory Guidelines range of imprisonment was 70 to 87 months, and, after considering the applicable factors under 18 U.S.C. § 3553(a), the district court sentenced Pascacio-Rodriguez to 70 months of imprisonment. On appeal, Pascacio-Rodriguez contends that the district court erroneously imposed the 16-

No. 12-40264

level enhancement, leading to an incorrect calculation of the Guidelines range. Absent the 16-level enhancement, the advisory Guidelines range would have been 33 to 41 months of imprisonment.

## II

The 16-level enhancement at issue applies if the defendant was deported after he had been convicted of "a crime of violence."[1] The term "crime of violence" as defined in the commentary to § 2L1.2 of the Sentencing Guidelines includes the offense of "murder" under federal, state, or local law,[2] and includes "conspiring" to commit murder.[3]

The Nevada statutes under which Pascacio-Rodrigez was convicted of conspiracy to commit murder did not include an overt act as an element of the offense. Pascacio-Rodriguez pleaded guilty to and was convicted of conspiring to commit murder "in violation of [sections] 199.480, 200.010 [and] 200.030" of the Nevada Revised Statutes that were in effect in 2003. Section 200.010 defined murder,[4] and section 200.030 defined the degrees of murder and the

---

[1] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A)(ii) (2011).

[2] *Id*. § 2L1.2 cmt. n.1(B)(iii). The definition provides in its entirety:

"Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

*Id*.

[3] *Id*. § 2L1.2 cmt. n.5. The comment provides as follows: "Aiding and Abetting, Conspiracies, and Attempts.—Prior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." *Id*.

[4] NEV. REV. STAT. § 200.010 (2003) (amended 2005). The 2003 version of the statute provides:

3

range of penalties.[5] Section 199.480(1)(b) sets forth the penalties for conspiracy to commit murder and provides for a minimum term of imprisonment of not less than two years and a maximum term of not more than ten years.[6] A separate Nevada statute, section 199.490, provides: "In any such proceeding for violation of NRS 199.480 [which includes conspiracy to commit murder], it shall not be necessary to prove that any overt act was done in pursuance of such unlawful conspiracy or combination."[7]

Nevertheless, the information by which Pascacio-Rodriguez was charged in Nevada expressly alleged multiple overt acts by Pascacio-Rodriguez or his cohort in furtherance of the conspiracy to commit murder, including the procurement of a firearm, firing the weapon at and wounding two individuals, and fleeing from the crime scene with the firearm:

> COUNT I - CONSPIRACY TO COMMIT MURDER
>
> defendants did then and there meet with each other and between themselves, and each of them with the other, wilfully, unlawfully, and feloniously conspire and agree to commit a crime, to-wit: murder, and in furtherance of said conspiracy, Defendants did commit the acts as set forth in Counts 2 and 3 [sic], said acts being incorporated by this reference as though fully set forth herein.
>
> COUNT 2 - DISCHARGING FIREARM OUT OF MOTOR VEHICLE

---

> Murder is the unlawful killing of a human being, with malice aforethought, either express or implied, or caused by a controlled substance which was sold, given, traded or otherwise made available to a person in violation of chapter 453 of NRS. The unlawful killing may be effected by any of the various means by which death may be occasioned.

*Id.*

[5] NEV. REV. STAT. § 200.030 (2001) (amended 2007).

[6] NEV. REV. STAT. § 199.480 (2003). Pascacio-Rodriguez was sentenced by the Nevada court to a minimum of 24 months of imprisonment and a maximum of 72 months of imprisonment.

[7] NEV. REV. STAT. § 199.490 (2003).

No. 12-40264

defendants did then and there wilfully, unlawfully, and feloniously, while in a motor vehicle within an area designated by City or County Ordinance, as a populated area for the purpose of prohibiting the discharge of weapons, maliciously or wantonly discharge, or cause a firearm to be discharged out of the motor vehicle, the Defendants being liable under the following principles of criminal liability, to-wit: by the Defendants acting together in furtherance of the conspiracy set forth in Count 1 above, by which each conspirator is liable for the acts of any co-conspirator in furtherance of the conspiracy, by Defendant HECTOR LUQUE-RAMIREZ, aka Hector Luqueramirez, shooting at and into the bodies of the said RICKIE SLAUGHTER and/or THOMAS EVANS with said firearm, by Defendant LUCIANO PASCACIO afterward attempting to flee the scene with the firearm used to shoot the said RICKIE SLAUGHTER and/or THOMAS EVANS; the Defendants aiding or abetting each other as follows: by going together prior to the crime to acquire a firearm, by going together to and from the crime scene, by fleeing the crime scene together, and by directly and indirectly counseling, encouraging, commanding, inducing, and procuring each other to commit the acts set forth herein; the said Defendants acting in concert throughout.

Pascacio-Rodriguez signed a written plea agreement in which he pleaded guilty to all of the allegations in the information.[8]

The first question we consider is whether, assuming that the Guidelines require an overt act as an element of conspiracy to commit murder, the fact that Pascacio-Rodriguez was expressly charged with and pleaded guilty to overt acts suffices to establish a crime of violence for purposes of the 16-level sentencing enhancement. A recent Supreme Court decision indicates that it does not. In *Descamps v. United States*,[9] which considered the meaning of "a violent felony"

---

[8] The signed plea agreement states in pertinent part: "I hereby agree to plead guilty to: one (1) count of CONSPIRACY TO COMMIT MURDER (Felony - NRS 200.010, 200.030, 199.480) and one (1) count of DISCHARGING FIREARM OUT OF MOTOR VEHICLE (Felony — NRS 202.287), *as more fully alleged in the charging document attached hereto as Exhibit '1'.*" (emphasis added).

[9] 133 S. Ct. 2276 (2013).

under the Armed Career Criminal Act, the Supreme Court held that sentencing courts may not consult additional documents (the so-called modified categorical approach) "when a defendant was convicted under an 'indivisible' statute—*i.e.*, one not containing alternative elements—that criminalizes a broader swath of conduct than the relevant generic offense."[10] Only the statute of conviction may be consulted if the statute is indivisible.[11]

The state conviction at issue in *Descamps* was for burglary under California law.[12] The Supreme Court has long held that Congress intended for the enumerated offenses in the ACCA, which include burglary, to refer only to the "generic" crime, meaning "the offense as commonly understood."[13] The Supreme Court explained that the generic offense of burglary "requires an unlawful entry along the lines of breaking and entering," but the California statue at issue in *Descamps* did not.[14] The district and appellate courts in *Descamps* had held that because the defendant had admitted to the elements of generic burglary during his California prosecution, his prior conviction should

---

[10] *Descamps*, 133 S. Ct. at 2281-82 (construing the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)).

[11] *Id.* at 2282.

[12] *Id.* (citing the defendant's conviction under California Penal Code Ann. § 459 (West 2010)).

[13] *Id.* at 2281. *But see United States v. Castleman*, No. 12-1371, 2014 WL 1225196, at *4-6 (U.S. Mar. 26, 2014) (explaining that when Congress uses common-law terms, it "intends to incorporate the well-settled meaning" of the terms, "except where that meaning does not fit" (internal quotation marks omitted) and using the common-law meaning of "force" in construing the ACCA's definition of "a misdemeanor crime of domestic violence"); *Shepard v. United States*, 544 U.S. 13, 26 (2005) (employing the modified categorical approach that permitted sentencing courts to consult certain restricted parts of the record of the prior conviction to determine if the conviction was for a generic crime enumerated in the ACCA); *Taylor v. United States*, 495 U.S. 575, 599-602 (1990) (adopting a formal categorical approach based on the elements of the generic crime).

[14] *Descamps*, 133 S. Ct. at 2285-86.

be considered to be a conviction for a violent felony.[15]  The Supreme Court disagreed, holding that "whether he [the defendant] admitted to breaking and entering is irrelevant."[16]

In *Descamps*, the Supreme Court described a divisible statute as one that "comprises multiple, alternative versions of the crime,"[17] while an indivisible statute is "one not containing alternative elements."[18]  In the present case, the Nevada statute of conspiracy that applies to conspiracy to commit murder is indivisible regarding the requirement of an overt act: An overt act is not an element of the Nevada conspiracy offense for which Pascacio-Rodriguez was convicted.  As in *Descamps*, "[t]he modified [categorical] approach . . . has no role to play in this case."[19]  We must therefore determine whether the Guidelines require an overt act as an element of a conspiracy to commit murder.

### III

The district court held that Pascacio-Rodriguez's prior Nevada conviction for conspiracy to commit murder was a crime of violence within the meaning of the Guidelines.  We review the district court's interpretation of the Guidelines and the commentary de novo.[20]

Theoretically, at least, there is more than one approach to construing § 2L1.2(b)(1)(A)(ii).  One is to discern from the language that the Sentencing

---

[15] *Id.* at 2282-83.

[16] *Id.* at 2286.

[17] *Id.* at 2284.

[18] *Id.* at 2281.

[19] *Id.* at 2285.

[20] *United States v. Diaz-Corado*, 648 F.3d 290, 292 (5th Cir. 2011) (per curiam) ("[T]his court reviews de novo the district court's interpretation and application of the Guidelines, including whether a defendant's prior conviction qualifies as a 'crime of violence' within the meaning of [U.S.S.G. § 2L1.2]." (second alteration in original) (quoting *United States v. Hernandez-Galvan*, 632 F.3d 192, 196 (5th Cir. 2011)) (internal quotation marks omitted)).

No. 12-40264

Commission used whether it intended for an overt act to be an element of every conspiracy conviction, regardless of the nature of the underlying offense, or whether the nature of the underlying offense should be considered. Another interpretive method is to employ the categorical approach to discern the elements of "conspiracy" or "conspiracy to commit murder," irrespective of the language of § 2L1.2(b)(1)(A)(ii). We conclude that under either approach, § 2L1.2(b)(1)(A)(ii) does not require an overt act as an element of conspiracy to commit murder.

## A

This court has said that in determining whether a prior conviction was for an enumerated offense and therefore a crime of violence within the meaning of the Guidelines, we generally employ the categorical approach,[21] as explicated by the Supreme Court in *Taylor v. United States*,[22] a case that, like *Descamps*, construed the Armed Career Criminal Act (ACCA).[23] When using the categorical approach, we "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood."[24] In a "narrow range of cases," we may employ an

---

[21] *See United States v. Najera-Mendoza*, 683 F.3d 627, 629 (5th Cir. 2012) (citing *United States v. Miranda-Ortegon*, 670 F.3d 661, 663 (5th Cir. 2012)). *But see United States v. Charles*, 301 F.3d 309, 313-14 (5th Cir. 2002) (en banc) (holding that, in applying U.S.S.G. § 4B1.2, the court will consider the elements of the charges against a defendant, even if they differ from the elements of the statute of conviction, because the commentary to U.S.S.G. § 4B1.2 "states that [o]ther offenses are included as crimes of violence if . . . the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted . . . by its nature, presented a serious potential risk of physical injury to another" (internal quotation marks omitted) (citing *United States v. Fitzhugh*, 954 F.2d 253 (5th Cir. 1992))).

[22] 495 U.S. 575 (1990).

[23] *Taylor*, 495 U.S. at 577 ("In this case we are called upon to determine the meaning of the word 'burglary' as it is used in . . . 18 U.S.C. § 924(e)."); *see also Descamps*, 133 S. Ct. at 2281-82.

[24] *Descamps*, 133 S. Ct. at 2281.

exception to the categorical approach, known as the modified categorical approach,[25] which is derived from the Supreme Court's decision in *Shepard v. United States*,[26] another case in which the Court construed the ACCA.[27]  As already discussed, *Descamps* teaches that the modified categorical approach may not be applied to an indivisible statute of conviction.  The Nevada statute under which Pascacio-Rodriguez was convicted does not list potential elements in the alternative, with one alternative being the commission of an overt act; instead, it provides that "it shall not be necessary to prove that any overt act was done in pursuance of such unlawful conspiracy."[28]

Neither "conspiracy" nor "murder" is defined by the Guidelines.  Utilizing the categorical approach, our task is to determine the elements of the generic offense of conspiracy to commit murder.  Recently, in *United States v. Rodriguez*,[29] this court set forth a methodology for defining enumerated, non-common law offenses that are not defined by the Guidelines, holding that we derive the meaning of such offenses from "common usage as stated in legal and other well-accepted dictionaries."[30]  We expressly "limit[ed] our holding [in *Rodriguez*] to offense categories that are not defined at common law" and explained that "[w]e leave the mechanics of how we determine the 'generic, contemporary meaning' of common-law offense categories for another day."[31]  Because both murder and conspiracy are offenses that *were* recognized by the

---

[25] *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 297 (5th Cir. 2008).

[26] 544 U.S. 13 (2005).

[27] *Shepard*, 544 U.S. at 15-16.

[28] NEV. REV. STAT. § 199.490 (2003).

[29] 711 F.3d 541 (5th Cir. 2013) (en banc).

[30] *See Rodriguez*, 711 F.3d at 552.

[31] *Id.* at 552 n.17.

common law,[32] *Rodriguez* does not govern how we are to construe the Guidelines in this appeal. This court's pre-*Rodriguez* precedent held that under the categorical approach, we "employ[] a common sense approach based on the generic, contemporary meaning of the terms used in the Guidelines."[33]

In divining the generic, contemporary meaning, we look to a number of sources, including federal law, the Model Penal Code, treatises, and modern state codes.[34] At common law, it was not necessary to allege or prove an act in furtherance of a conspiracy.[35] The Supreme Court has held that, as a general proposition, courts should construe federal statutes based on the assumption that Congress intended to adopt the common-law meaning of statutory terms unless Congress has indicated otherwise.[36] Accordingly, the Supreme Court has not read an overt-act requirement into federal conspiracy offenses.[37] We note

---

[32] *See id.* at 558 (noting that "by the 1600's . . . judges . . . had created the felon[y] of murder" and later created conspiracy in 1664 (quoting WAYNE R. LAFAVE, CRIMINAL LAW § 2.1(b) (5th ed. 2010))).

[33] *United States v. Herrera*, 647 F.3d 172, 176 (5th Cir. 2011) (quoting *United States v. Hernandez-Galvan*, 632 F.3d 192, 196 (5th Cir. 2011)) (internal quotation marks omitted); *see also Hernandez-Galvan*, 632 F.3d at 196 (applying the generic, contemporary meaning test to a defendant's attempt conviction to determine whether the district court erred in applying the § 2L1.2(b)(1)(A)(ii) enhancement).

[34] *United States v. Esparza-Perez*, 681 F.3d 228, 229 (5th Cir. 2012) (citing *United States v. Iniguez-Barba*, 485 F.3d 790, 791 (5th Cir. 2007)); *United States v. Tellez-Martinez*, 517 F.3d 813, 815 (5th Cir. 2008) (per curiam).

[35] *See United States v. Shabani*, 513 U.S. 10, 13-14 (1994) ("We have consistently held that the common law understanding of conspiracy 'does not make the doing of any act other than the act of conspiring a condition of liability.'" (quoting *Nash v. United States*, 229 U.S. 373, 378 (1913))).

[36] *See id.* at 13 ("*Nash* and *Singer* follow the settled principle of statutory construction that, absent contrary indications, Congress intends to adopt the common law definition of statutory terms."); *see also United States v. Castleman*, No. 12-1371, 2014 WL 1225196, at *4-5 (U.S. Mar. 26, 2014) (defining the term "physical force" in the ACCA in reference to its "established common-law meaning").

[37] *See id.* at 13-15.

that, in *Taylor*, "conspiracy" to commit one of the offenses enumerated in the ACCA was not at issue. The Supreme Court held in *Taylor* that Congress had indicated that it did not intend to adopt the common-law definition when it used the term "burglary" in the ACCA.[38] The Court discerned that Congress instead intended "burglary" to have a "generic, contemporary meaning" when that term was used in the ACCA.[39] The common-law definition of conspiracy is enlightening in determining the generic, contemporary meaning of conspiracy to commit murder, but it is not dispositive.

A survey of federal conspiracy statutes reveals that Congress has sometimes required an overt act, but more often it has not. The general federal conspiracy provision, which applies to conspiracy "to commit any offense against the United States, or to defraud the United States . . . in any manner or for any purpose," requires an overt act.[40] In more specifically tailored conspiracy statutes, the majority do not require an overt act. A review of conspiracy provisions that might generally be described as pertaining to nonviolent crimes

---

[38] *Taylor v. United States*, 495 U.S. 575, 598 (1990).

[39] *Id.*

[40] 18 U.S.C. § 371 ("If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.").

11

reveals that at least 15 of such provisions require an overt act,[41] while at least 99 do not.[42]

---

[41] 18 U.S.C. § 793(g) (conspiracy to gather, transmit, or lose defense information); *id.* § 794(c) (conspiracy to gather or deliver defense information to aid a foreign government); *id.* § 831(a)(2), (8) (conspiracy to obtain nuclear material without authorization); *id.* § 1029(b)(2) (conspiracy to commit fraud or a related activity in connection with access devices); *id.* § 1365(e) (conspiracy to tamper with consumer products); *id.* § 1511 (conspiracy to obstruct state or local law enforcement with intent to facilitate an illegal gambling business); *id.* § 1832(a)(5) (conspiracy to commit theft of trade secrets); *id.* § 2153(b) (conspiracy to destroy war material, war premises, or war utilities); *id.* § 2154(b) (conspiracy to produce defective war material, war premises, or war utilities); *id.* § 2155(b) (conspiracy to destroy national-defense materials, national-defense premises, or national-defense utilities); *id.* § 2156(b) (conspiracy to produce defective national-defense material, national-defense premises, or national-defense utilities); *id.* § 2388(b) (conspiracy to commit certain nonviolent acts affecting the armed forces during times of war); 42 U.S.C. § 1761(o)(3) (conspiracy to violate certain provisions regulating the summer food service program for children); 47 U.S.C. § 509(a)(5) (conspiracy to influence, prearrange, or predetermine the outcome of a radio contest); 49 U.S.C. § 46505(e) (conspiracy to carry a weapon or explosive on an aircraft).

[42] 2 U.S.C. § 441h (conspiracy to make certain fraudulent misrepresentations in a federal election campaign); 7 U.S.C. § 192(f)-(g) (conspiracy by packers or swine contractors to engage in certain unlawful practices); *id.* § 2303(f) (conspiracy to commit unfair trade practices affecting producers of agricultural products); 8 U.S.C. § 1253(c) (conspiracy to prevent or hamper the removal of an alien subject to deportation); *id.* § 1324(a)(1)(A)(v)(I) (conspiracy to bring in or harbor certain aliens); *id.* § 1327 (conspiracy to aid or assist certain aliens to enter the United States); 12 U.S.C. § 617 (conspiracy to use the credit, funds, or the power of certain corporations to control the prices of commodities); 15 U.S.C. § 1 (conspiracy to restrain interstate trade or commerce); *id.* § 2 (conspiracy to monopolize trade); *id.* § 3 (conspiracy to restrain or monopolize trade or commerce in a Territory of the United States or in the District of Columbia); *id.* § 8 (conspiracy to restrain import trade); *id.* § 76 (conspiracy to import restricted items during times of foreign war); *id.* § 77 (conspiracy to furnish facilities or privileges to ships or persons contrary to a presidential proclamation); *id.* § 714m(d) (conspiracy to make false statements, commit embezzlement, commit larceny, or convert property in relation to the Commodity Credit Corporation); *id.* § 1644(a)-(b) (conspiracy to commit credit card fraud or to transport "a counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card" in interstate or foreign commerce); *id.* § 1693n(b)(1)-(2) (conspiracy to use or transport in interstate or foreign commerce a counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained debit instrument); 16 U.S.C. § 831t(c) (conspiracy to defraud the Tennessee Valley Authority); 18 U.S.C. § 32(a)(1)-(5), (7)-(8) (conspiracy to commit certain acts involving the destruction of aircraft or aircraft facilities); *id.* § 32(b)(2)-(4) (conspiracy to destroy or cause damage to a civil aircraft registered in a country other than the United States); *id.* § 37(a)(2) (conspiracy to damage the facilities of an international airport); *id.* § 38(a)(3) (conspiracy to commit fraud involving aircraft or space vehicle parts in interstate or foreign commerce); *id.* § 43(a)(2)(A), (C) (conspiracy to damage or interfere with the operations of an animal enterprise by property damage); *id.* § 175(a) (conspiracy to develop, produce, stockpile, transfer, acquire, retain, or possess any biological

agent, toxin, or delivery system for use as a weapon or to assist a foreign state or an organization to do so); *id.* § 175c(c)(1) (conspiracy to "knowingly produce, engineer, synthesize, acquire, transfer directly or indirectly, receive, possess, import, [or] export . . . variola virus"); *id.* § 224 (conspiracy to commit bribery in sporting contests); *id.* § 229(a)(2) (conspiracy to "develop, produce, otherwise acquire, transfer directly or indirectly, receive, stockpile, retain, own, [or] possess" a chemical weapon); *id.* § 286 (conspiracy to defraud the United States with respect to claims); *id.* § 521(c)(1), (3) (providing a ten-year sentence enhancement for conspiracy to commit a drug-trafficking crime while belonging to a criminal street gang); *id.* § 555(d) (conspiracy to commit certain offenses related to border tunnels or passages); *id.* § 670(a)(6) (conspiracy to commit theft of medical products); *id.* § 757 (conspiracy to procure the escape or to aid escaped prisoners of war or enemy aliens); *id.* § 799 (conspiracy to violate regulations of the National Aeronautics and Space Administration); *id.* § 832(a), (c) (conspiracy to "willfully participate[] in or knowingly provide[] material support or resources" to a foreign terrorist power's nuclear weapons program or other weapons-of-mass-destruction program and conspiracy to "develop or possess a radiological weapon"); *id.* § 1028(f) (conspiracy to commit fraud or a related activity in connection with identification documents, authentication features, and information); *id.* § 1030(a)(1)-(6), (b) (conspiracy to commit fraud or a related crime in connection with computers); *id.* § 1037(a)(5) (conspiracy to falsely represent oneself as the registrant of five or more Internet Protocol addresses and to initiate commercial electronic mail messages from those addresses); *id.* § 1349 (conspiracy to commit mail fraud or another fraud offense under chapter 63 of title 18); *id.* § 1362 (conspiracy to damage or interfere with communication lines, stations, or systems "operated or controlled by the United States, or used or intended to be used for military or civil defense functions of the United States"); *id.* § 1363 (conspiracy to destroy or injure buildings or property within special maritime or territorial jurisdiction); *id.* § 1366 (conspiracy to destroy an energy facility); *id.* § 1368 (conspiracy to harm animals used in law enforcement); *id.* § 1389(a)(1)-(2) (conspiracy to knowingly destroy or injure the property of a United States serviceman or an immediate family member on account of the serviceman's status); *id.* § 1466A (conspiracy to commit offenses related to possession and distribution of obscene visual representations of the sexual abuse of children); *id.* § 1512(b)-(d), (k) (conspiracy to tamper with a witness, victim, or informant); *id.* § 1513(b), (e)-(f) (conspiracy to retaliate against a witness, victim, or informant through property damage or interference with employment or livelihood); *id.* § 1521 (conspiracy to retaliate against a federal judge or federal law enforcement officer by false claim or slander of title); *id.* § 1594(b) (conspiracy to commit a number of offenses involving human trafficking, some of which are nonviolent); *id.* § 1594(c) (conspiracy to recruit persons for human trafficking or to benefit financially from human trafficking)*; id.* § 1956(h) (conspiracy to launder money or to engage in monetary transactions in property derived from specified unlawful activity); *id.* § 1958(a) (conspiracy to use interstate commerce facilities to further the commission of a murder for hire); *id.* § 1962(d) (conspiracy to engage in prohibited racketeering activities); *id.* § 1992(a)(5), (8)-(10) (conspiracy to commit certain nonviolent acts against a railroad carrier or mass transportation system); *id.* § 2252(b) (conspiracy to conduct certain activities related to child pornography); *id.* § 2252A(b) (conspiracy to conduct certain activities relating to material containing child pornography); *id.* § 2260(b), (c)(2) (conspiracy to commit certain acts relating to transportation of "any visual depiction of a minor engaging in sexually explicit conduct" with intent that such a depiction will be imported into the United States); *id.* § 2271 (conspiracy to destroy a vessel with intent to injure certain insurers or

underwriters); *id.* § 2280(a)(1)(C)-(F), (H) (conspiracy to endanger a ship); *id.* § 2281(a)(1)(C)-(D), (F) (conspiracy to endanger the safety of a maritime fixed platform); *id.* § 2285 (conspiracy to operate a submersible vessel or semi-submersible vessel without nationality); *id.* § 2291 (1)-(3), (5), (8)-(9) (conspiracy to destroy a vessel or maritime facility); *id.* § 2320(a) (conspiracy to traffic in counterfeit goods or services); *id.* § 2332g(a), (c)(1) (conspiracy to "knowingly produce, construct, otherwise acquire, transfer directly or indirectly, receive, possess, import, [or] export" a missile system designed to destroy aircraft); *id.* § 2332h(a), (c)(1) (conspiracy to "knowingly produce, construct, otherwise acquire, transfer directly or indirectly, receive, possess, import, [or] export" a radiological dispersal device); *id.* § 2339B(a)(1) (conspiracy to provide material support or resources to designated foreign terrorist organizations); *id.* § 2339C (conspiracy to finance terrorism); *id.* § 2385 (conspiracy to advocate the overthrow of the United States government); *id.* § 2423(e) (conspiracy to commit certain offenses involving traveling or transporting others for the purpose of engaging in illicit sexual conduct with a minor); *id.* § 2442 (conspiracy to recruit or use child soldiers); 19 U.S.C. § 1590 (conspiracy to commit aviation smuggling); 21 U.S.C. § 846 (conspiracy to commit a drug crime); *id.* § 960a (conspiracy to violate certain drug-trafficking provisions with intent to provide aid to foreign terrorist groups); *id.* § 963 (conspiracy to commit offenses related to the import or export of a controlled substance); *id.* § 1904(c)(2) (conspiracy to violate provisions regarding transactions related to international narcotics traffickers); 22 U.S.C. § 8512(c) (conspiracy to violate provisions regarding economic sanctions against Iran); *id.* § 8513(c)(3), (d)(2) (conspiracy to violate regulations regarding financial institutions that engage in certain transactions related to Iran); *id.* § 8513a(g)(2) (conspiracy to violate provisions related to the imposition of sanctions with respect to the financial sector of Iran); *id.* § 8781(b) (conspiracy to violate certain provisions related to Iran and Syria); *id.* § 8809(b) (conspiracy to violate statutory provisions or regulations related to Iran freedom and counterproliferation); 26 U.S.C. § 7214 (conspiracy by an officer or employee of the United States to defraud the United States); 31 U.S.C. § 3729(a)(1)(C) (conspiracy to make false claims for payment against the United States government); *id.* § 5332 (conspiracy to smuggle currency into or out of the United States); 38 U.S.C. § 1987 (conspiracy to commit fraud related to veterans' insurance benefits); 42 U.S.C. § 1973i(c) (conspiracy to encourage false registration to vote or illegal voting); *id.* § 1973j(c) (conspiracy to interfere with voting rights); *id.* § 2272(a)-(b) (conspiracy to violate certain provisions regarding the development and control of atomic energy); *id.* § 2273(a) (conspiracy to violate provisions or regulations governing the development and control of atomic energy for which no other criminal penalty is specified); *id.* § 2274 (conspiracy to communicate, transmit, or disclose restricted data related to atomic energy); *id.* § 2275 (conspiracy to receive restricted data related to atomic energy); *id.* § 2277 (conspiracy to communicate or receive restricted data related to atomic energy without authorization); *id.* § 2284 (conspiracy to sabotage nuclear facilities or fuel); *id.* § 15544(a) (conspiracy to deprive voters of a fair election); 46 U.S.C. § 56102 (conspiracy to violate certain controls during war or national emergency); *id.* § 70506 (conspiracy to manufacture, distribute, or posses a controlled substance on a vessel); 49 U.S.C. § 32703(4) (conspiracy to commit certain acts relating to odometers); *id.* § 60123(b) (conspiracy to damage or destroy a gas pipeline facility or a hazardous liquid pipeline facility); 50 U.S.C. § 167k (conspiracy to violate provisions regulating helium gas); *id.* § 1705 (conspiracy to violate any license, order, regulation, or prohibition issued under the chapter governing international emergency economic powers); *id.* app. § 462 (conspiracy to interfere with the administration of the selective service); *id.* app. § 2410

No. 12-40264

Among the federal statutes that deal with conspiracies to commit crimes that arguably would be within the definition of a "crime of violence" in § 2L1.2,[43] eight require an overt act,[44] while 43 do not.[45]

---

(conspiracy to violate export regulations).

[43] *See* U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A)(ii) & cmt. n.1(B)(iii) (2011).

[44] 18 U.S.C. § 351(d) (conspiracy to kill or kidnap certain congressional, cabinet, and Supreme Court officials); *id.* § 831(a)(1), (3)-(6), (8) (conspiracy to use or threaten violence to conduct a prohibited transaction involving nuclear materials); *id.* § 956 (conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country); *id.* § 1117 (conspiracy to commit murder); *id.* § 1201(c) (conspiracy to kidnap); *id.* § 1751(d) (conspiracy to kidnap or kill the president or certain presidential staff); *id.* § 2118(d) (conspiracy to commit robbery or burglary involving a controlled substance); *id.* § 2332(b) (conspiracy to kill a United States national while the conspirator is outside of the United States).

[45] 18 U.S.C. § 32(a)(6), (8) (conspiracy to commit certain acts of violence likely to endanger the safety of an aircraft); *id.* § 32(b)(1), (4) (conspiracy perform "an act of violence against an individual on board any civil aircraft registered in a country other than the United States, if such act is likely to endanger the safety of that aircraft"); *id.* § 33(a) (conspiracy to disable or incapacitate any driver or person employed in connection with the operation or maintenance of a motor vehicle); *id.* § 37(a)(1) (conspiracy to commit acts of violence at international airports); *id.* § 43(a)(2)(B)-(C) (conspiracy to damage or interfere with the operations of an animal enterprise through threats of bodily injury); *id.* § 81 (conspiracy to commit arson within special maritime and territorial jurisdiction); *id.* § 115 (conspiracy to influence, impede, or retaliate against a federal official by threatening, injuring, or killing a family member)*; id.* § 175c(a), (c)(2) (conspiracy to use or threaten to use variola virus); *id.* § 229(a) (conspiracy to use or threaten to use a chemical weapon); *id.* § 241 (conspiracy "to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same"); *id.* § 372 (conspiracy to impede or injure an officer of the United States); *id.* § 844(m) (conspiracy to commit a felony using fire or any explosive); *id.* § 892(a) (conspiracy to make an extortionate extension of credit); *id.* § 894(a) (conspiracy to collect extensions of credit by extortionate means); *id.* § 924(o) (conspiracy to commit a crime of violence or a drug-trafficking crime while carrying a firearm); *id.* § 1030(a)(7), (b) (conspiracy to commit extortion by threatening to damage a computer, impair the confidentiality of information on a computer, or access information on a protected computer); *id.* § 1091 (conspiracy to commit genocide); *id.* § 1203(a) (conspiracy to take hostages); *id.* § 1389(a)(1), (3) (conspiracy to assault or batter a United States serviceman or an immediate family member on account of the serviceman's status); *id.* § 1512(a), (k) (conspiracy to kill or use physical force or the threat of physical force

15

No. 12-40264

A number of broadly applicable federal conspiracy provisions do not require an overt act, including conspiracy to bring aliens to the United States or to harbor them after entry;[46] conspiracy to commit racketeering offenses under the Racketeer Influenced and Corrupt Organizations Act (RICO);[47] conspiracy to commit violent crimes in aid of racketeering activity under RICO;[48] conspiracy

---

to tamper with the judicial process); *id.* § 1513(a)-(b), (f) (conspiracy to kill, injure, or threaten to injure, in retaliation for testimony or assistance to law enforcement); *id.* § 1594(b) (conspiracy to commit a number of offenses involving human trafficking, many of which include enumerated crimes of violence or involve the element of the "use, attempted use, or threatened use of physical force against the person of another"); *id.* § 1752(a)(4) (conspiracy to engage in any act of physical violence in a restricted government building or its grounds); *id.* § 1792 (conspiracy to cause mutiny or riot at a federal prison); *id.* § 1951(a) (conspiracy to interfere with commerce by threats or violence); *id.* § 1959 (conspiracy to commit violent crimes in aid of racketeering activity); *id.* § 1992(a)(1)-(4), (6)-(7), (10) (conspiracy to commit a terrorist attack or other violent act against a railroad carrier or mass transportation system); *id.* § 2192 (conspiracy to incite seamen to revolt or mutiny); *id.* § 2251 (conspiracy to commit various offenses relating to sexual exploitation of a child); *id.* § 2280(a)(1)(A)-(B), (G), (H) (conspiracy to commit acts of violence likely to endanger safe maritime navigation); *id.* § 2281(a)(1)(A)-(B), (E)-(F) (conspiracy to commit violent acts that endanger the safety of a maritime fixed platform); *id.* § 2291(4), (6)-(7), (9) (conspiracy to interfere with the operation of a vessel or maritime facility using violence); *id.* § 2332a (conspiracy to use weapons of mass destruction); *id.* § 2332b (conspiracy to commit acts of terrorism transcending national boundaries); *id.* § 2332f(a)(1)(A) (conspiracy to deliver, place, discharge, or detonate an explosive device in certain public places and government facilities with intent to cause death or serious bodily injury); *id.* § 2332g(a), (c)(2) (conspiracy to use or to possess and threaten to use a missile system designed to destroy aircraft); *id.* § 2332h(a), (c)(1)-(2) (conspiracy to use or to possess and threaten to use a radiological dispersal device); *id.* § 2340A (conspiracy to torture); *id.* § 2384 (conspiracy to "overthrow, put down, or . . . destroy by force the Government of the United States"); *id.* § 2441 (conspiracy to commit war crimes); 42 U.S.C. § 2272(b) (conspiracy to use or to possess and threaten to use any atomic weapon); 49 U.S.C. § 46502 (conspiracy to commit aircraft piracy); 49 U.S.C. § 46504 (conspiracy to interfere with flight crew members and attendants through assault or intimidation).

[46] *See* 8 U.S.C. § 1324(a)(1)(A)(v)(I).

[47] 18 U.S.C. § 1962(d); *see Salinas v. United States*, 522 U.S. 52, 63-64 (1997) (holding that because § 1962(d) does not contain an overt-act requirement in the statutory text, the government is not required to prove that an overt act occurred).

[48] 18 U.S.C. § 1959.

No. 12-40264

to commit fraud offenses, including wire and mail fraud;[49] conspiracy to commit drug-related offenses;[50] and conspiracy to fix prices in violation of § 1 of the Sherman Act.[51]

We believe that our inquiry should be more narrow, however, and should focus on the particular offense that is at issue in this appeal, which is conspiracy to commit murder. Under federal statutes, approximately five provisions involving conspiracy to commit murder require an overt act,[52] while at least nine do not.[53]

---

[49] *Id.* § 1349; *see United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir. 2011) ("[A] conspiracy to commit wire and/or mail fraud does not require proof of an overt act.").

[50] 21 U.S.C. § 846; *see United States v. Shabani*, 513 U.S. 10, 13-15 (1994).

[51] 15 U.S.C. § 1; *see United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 224 n.59 (1940) ("[I]t is . . . well settled that conspiracies under the Sherman Act are not dependent on any overt act other than the act of conspiring." (citing *Nash v. United States*, 229 U.S. 373, 378 (1913))).

[52] *See* 18 U.S.C. § 351(d) (conspiracy to kill or kidnap certain congressional, cabinet, and Supreme Court officials); *id.* § 956 (conspiracy to kill, kidnap, maim, or injure persons in a foreign country); *id.* § 1117 (conspiracy to commit murder); *id.* § 1751(d) (conspiracy to kidnap or kill the President or certain presidential staff); *id.* § 2332(b) (conspiracy to kill a United States national while the conspirator is outside of the United States).

[53] *See* 18 U.S.C. § 115 (conspiracy to influence, impede, or retaliate against a federal official by threatening, injuring, or killing a family member); *id.* § 1091(d) (conspiracy to kill for purposes of genocide); *id.* § 1512(a)(1), (k) (conspiracy to kill to tamper with the judicial process); *id.* § 1513(a), (f) (conspiracy to kill in retaliation for testimony or assistance to law enforcement); *id.* § 1959 (conspiracy to commit violent crimes, including murder, in aid of racketeering activity); *id.* § 1992(a)(7), (10) (conspiracy to "commit[] an act, including the use of a dangerous weapon, with the intent to cause death or serious bodily injury" to a person on certain mass-transit property); *id.* § 2280(a)(1)(G)-(H) (conspiracy to injure or kill a person in connection with certain acts jeopardizing maritime navigation); *id.* § 2281(a)(1)(E)-(F) (conspiracy to injure or kill a person in connection with certain acts jeopardizing a maritime fixed platform); *id.* § 2332b(a)(1)(A), (c) (conspiracy to kill in connection with an act of terrorism transcending national boundaries).

No. 12-40264

The Model Penal Code's general conspiracy provision does not require an overt act for first- or second-degree felonies.[54]  The Model Penal Code provides that murder is a first-degree felony;[55] therefore, an overt act is not required for conspiracy to commit murder under the Model Penal Code.

An oft-cited treatise notes that, although "[a]t common law a conspiracy was punishable even though no act was done beyond the mere making of the agreement . . . , most of the states now require that an overt act in furtherance of the plan be proven for all or specified conspiratorial objectives."[56]  Similarly, *Black's Law Dictionary* defines conspiracy as "[a]n agreement by two or more persons to commit an unlawful act, coupled with an intent to achieve the agreement's objective, and (in most states) action or conduct that furthers the agreement; a combination for an unlawful purpose."[57]  It appears that 34 states require an overt act as an element of all criminal conspiracies,[58] while 13 states

---

[54]  MODEL PENAL CODE § 5.03(5) (1962) ("Overt Act. No person may be convicted of conspiracy to commit a crime, other than a felony of the first or second degree, unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.").

[55]  *Id.* § 210.2(2).

[56]  WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 12.2(b) (2d ed. 2003) (citations omitted).

[57]  BLACK'S LAW DICTIONARY 351 (9th ed. 2009).

[58]  ALA. CODE § 13A-4-3(a) (2013); ALASKA STAT. ANN. § 11.31.120(a) (West 2013); ARK. CODE ANN. § 5-3-401(2) (West 2013); CAL. PENAL CODE § 184 (West 2013); COLO. REV. STAT. § 18-2-201(2) (West 2013); CONN. GEN. STAT. ANN. § 53a-48(a) (West 2013); GA. CODE ANN. § 16-4-8 (West 2013); HAW. REV. STAT. § 705-520(2) (West 2013); IDAHO CODE ANN. § 18-1701 (West 2013); 720 ILL. COMP. STAT. ANN. 5/8-2(a) (West 2013); IND. CODE ANN. § 35-41-5-2(b) (West 2013); IOWA CODE ANN. § 706.1(3) (West 2013); KAN. STAT. ANN. § 21-5302(a) (West 2013); KY. REV. STAT. ANN. § 506.050(1) (West 2013); LA. REV. STAT. ANN. § 14:26(A) (2013); ME. REV. STAT. ANN. tit. 17-A, § 151(4) (2013); MINN. STAT. ANN. § 609.175(2) (West 2013); MO. ANN. STAT. § 564.016(4) (West 2013); MONT. CODE ANN. § 45-4-102(1) (2013); NEB. REV. STAT. § 28-202(1)(b) (2013); N.H. REV. STAT. ANN. § 629:3(I) (2013); N.Y. PENAL LAW § 105.20 (McKinney 2013); N.D. CENT. CODE ANN. § 12.1-06-04(1) (West 2013); OHIO REV. CODE ANN. § 2923.01(B) (West 2013); OKLA. STAT. ANN. tit. 21, § 423 (West 2013); 18 PA. CONS. STAT. ANN. § 903(e) (West 2013); S.D. CODIFIED LAWS § 22-3-8 (2013); TENN. CODE ANN. § 39-12-103(d)

18

do not require an overt act for any conspiracy offense.[59]  The three remaining states—Arizona, New Jersey, and Utah—do not require an overt act for certain serious crimes.[60]  In Arizona, no overt act is required "if the object of the conspiracy was to commit any felony upon the person of another,"[61] and both first- and second-degree murder are felonies in Arizona.[62]  In New Jersey, no overt act is required for "conspiracy to commit . . . a crime of the first or second degree,"[63] and "[m]urder is a crime of the first degree."[64]  In Utah, no overt act is required when "the offense is a capital felony, a felony against the person, arson, burglary, or robbery."[65]  Murder is a first-degree felony in Utah.[66]

Were we to focus solely on the requirements of a majority of the states' laws regarding the necessity of alleging and proving an overt act in furtherance of a conspiracy to commit murder, we would be compelled to conclude that the

---

(West 2013); TEX. PENAL CODE ANN. § 15.02(a)(2) (West 2013); VT. STAT. ANN. tit. 13, § 1404(b) (West 2013); WASH. REV. CODE ANN. § 9A.28.040(1) (West 2013); W. VA. CODE ANN. § 61-10-31 (West 2013); WIS. STAT. ANN. § 939.31 (West 2013); WYO. STAT. ANN. § 6-1-303(a) (West 2013).

[59]  DEL. CODE ANN. tit. 11, §§ 511(1), 512(1), 513(1) (West 2013); FLA. STAT. ANN. § 777.04(3) (West 2013); MD. CODE ANN., CRIM. LAW § 1-203 (West 2013); MICH. COMP. LAWS ANN. § 750.157a (West 2013); MISS. CODE ANN. § 97-1-1(1)(a), (h) (West 2013); NEV. REV. STAT. ANN. §§ 199.480, 199.490 (West 2013); N.M. STAT. ANN. § 30-28-2(A) (West 2013); OR. REV. STAT. ANN. § 161.450(1) (West 2013); S.C. CODE ANN. § 16-17-410 (2013); VA. CODE ANN. § 18.2-22(a) (West 2013); *Commonwealth v. Cerveny*, 439 N.E.2d 754, 759 (Mass. 1982) (stating that no overt act is necessary for a conspiracy conviction); *State v. Bindyke*, 220 S.E.2d 521, 526 (N.C. 1975) (same); *State v. Brown*, 486 A.2d 595, 601 (R.I. 1985) (same).

[60]  ARIZ. REV. STAT. ANN. § 13-1003(A) (2013); N.J. STAT. ANN. § 2C:5-2(d) (West 2013); UTAH CODE ANN. § 76-4-201 (West 2013).

[61]  ARIZ. REV. STAT. ANN. § 13-1003(A).

[62]  *Id.* §§ 13-1104 to -1105.

[63]  N.J. STAT. ANN. § 2C:5-2(d).

[64]  *Id.* § 2C:11-3(b)(1).

[65]  UTAH CODE ANN. § 76-4-201.

[66]  *Id.* § 76-5-203(3)(a).

generic, contemporary definition of conspiracy to commit murder includes the requirement of an overt act. However, to do so would ignore the laws of 16 states, a number of federal laws, and the Model Penal Code, none of which contains an overt-act requirement for conspiracy to commit murder. After surveying the various sources typically consulted in applying the categorical approach, it appears to us that, albeit slight, the weight of authority indicates that conspiracy to commit murder does not require an overt act as an element.

## B

It is not clear, however, whether this court's precedent requires that we apply the categorical approach in discerning the elements of a conspiracy, as that term is used in § 2L1.2(b)(1)(A)(ii). In *United States v. Rodriguez-Escareno*,[67] we held that, in interpreting § 2L1.2(b)(1)(A)(i), at least with respect to a conspiracy to commit a federal drug trafficking offense, we do not follow the "analytical route" of seeking a crime's "'generic, contemporary meaning[,]'" which would include "examin[ing] 'the Model Penal Code, treatises, federal and state law, dictionaries, and the Uniform Code of Military Justice' for a definition."[68] In *Rodriguez-Escareno*, the defendant had a prior conviction under 21 U.S.C. § 846 for conspiracy to commit a drug trafficking offense.[69] We noted that, although "'most jurisdictions' require proof of an overt act to establish a conspiracy,"[70] no overt act is required for conviction of a conspiracy under § 846.[71] The defendant argued that, because there was no overt-act

---

[67] 700 F.3d 751 (5th Cir. 2012).

[68] *Rodriguez-Escareno*, 700 F.3d at 753 (quoting *United States v. Santiesteban-Hernandez*, 469 F.3d 376, 379 (5th Cir. 2006)).

[69] *Id.*

[70] *Id.* (quoting *United States v. Mendez-Casarez*, 624 F.3d 233, 240 (5th Cir. 2010)).

[71] *Id.* (citing *United States v. Shabani*, 513 U.S. 10, 13-14 (1994)).

requirement, a conspiracy under § 846 was not within the generic, contemporary meaning of "conspiracy."  We rejected that argument, holding that there is no need to "find meaning for the offense [of conspiracy to commit a drug trafficking offense] outside of the Guidelines."[72]  We reasoned that "[t]he Guidelines themselves tell us that a conviction for a conspiracy to commit a federal drug trafficking offense will justify application of the enhancement" and that "Application Note 5 is a clear statement by the Sentencing Commission that the enhancement applies to conspiracies to commit federal drug trafficking offenses."[73]  We further explained that "[f]or us, nonetheless, to search for a generic meaning of 'conspiracy' by employing a doctrine generally used to determine whether a state conviction is of an enumerated crime, would only becloud what is clear from the Guideline itself."[74]

Although our decision in *Rodriguez-Escareno* stated in a footnote that "[w]e imply no position on the relevance of this reasoning to applying the enhancement to convictions for conspiracies to commit state-law offenses,"[75] there is no basis for concluding that the Sentencing Commission intended to create a dichotomy in § 2L1.2 between conspiracy convictions under federal law and conspiracy convictions under state law.  The text of Application Note 5, which states that "[p]rior convictions of offenses counted under subsection (b)(1) include the offenses of . . . conspiring . . . to commit such offenses,"[76] does not draw a distinction between federal and state crimes and does not reasonably permit courts to draw such a distinction.

---

[72] *Id.*

[73] *Id.* at 753-54.

[74] *Id.* at 754.

[75] *Id.* at 754 n.2.

[76] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n.5 (2011).

No. 12-40264

We do not quarrel with the ultimate holding in *Rodriguez-Escareno*. Rather, it highlights the fact that considerable weight must be given to the number of serious federal conspiracy offenses that do not require an overt act. Our decision in *Rodriguez-Escareno* counsels against simply tallying the number of state laws that require an overt act and those that do not.

We are also persuaded that serious federal conspiracy crimes, such as a conspiracy to murder a family member of a federal official;[77] conspiracy to kill a witness, victim, or informant to prevent testimony or in retaliation for testimony;[78] and other conspiracies aimed at causing death or serious bodily injury[79] were undoubtedly intended by the Sentencing Commission to result in a 16-level enhancement under § 2L1.2, regardless of whether the statute of conviction has an overt act as an element of the offense. We see no basis for concluding that the Commission intended offenses under state law to be treated differently from similar or identical offenses under federal law. The Guidelines regarding a conspiracy to commit a "crime of violence" do not expressly differentiate based on whether an overt act was required by the statute of conviction. This is true regardless of whether the statute of conviction was a federal or a state law. We do not see a reasoned basis for construing the Guidelines to mean that the advisory range of punishment differs depending upon whether a conspirator to murder a family member of a federal official was prosecuted under state or federal law, even if the state and federal laws had the same essential elements. There is no indication that the Sentencing Commission intended the definition of "conspiracy" as used in Application Note

---

[77] 18 U.S.C. § 115.

[78] *Id.* §§ 1512(a), (k), 1513(a), (f).

[79] *See supra* notes 44-45 and accompanying text.

No. 12-40264

5 to vary, depending upon whether the conviction was obtained under federal or state law.

## C

We cannot reasonably conclude that the Sentencing Commission intended "conspiracy" within the meaning of Application Note 5 to require an overt act as an element of each and every conspiracy offense.[80] The language and context of § 2L1.2 indicate that an overt act is not required for a conspiracy to commit murder. Alternatively, we conclude that the generic, contemporary meaning of "conspiracy to commit murder" does not require an overt act. We note the possibility that there is no "generic, contemporary" meaning of "conspiracy to commit murder" in light of the marked differences between the 34 state laws of conspiracy that require an overt act for every offense, on one hand, and the 16 state laws and the numerous federal laws that do not have such a requirement.

We conclude that conspiracy to commit murder, within the meaning of Application Note 5 of § 2L1.2, does not require an overt act as an element of the offense.

\*     \*     \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[80] *But see United States v. Gore*, 636 F.3d 728, 745 (5th Cir. 2011) (Higginbotham, J., concurring) (observing in a case construing the residual clause of the ACCA regarding a Texas conviction for aggravated robbery, and not construing the Guidelines, that "[i]n my view, the generic, contemporary definition of a criminal conspiracy includes a requirement that at least one of the conspirators take an overt act in furtherance of the agreement").