# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 21, 2012

Lyle W. Cayce
Clerk

No. 11-10973

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

HERMENEGILDO AVALOS-MARTINEZ,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:11-CR-44-1

Before JONES, Chief Judge, and GARZA and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant–Appellant Hermenegildo Avalos-Martinez appeals the sentence imposed following his guilty plea for illegally reentering the United States after having been deported.  For the reasons stated below, we AFFIRM.

## I. BACKGROUND

Avalos-Martinez pleaded guilty to illegally reentering the United States after having been deported, in violation of 8 U.S.C. § 1326.  In connection with his guilty plea, Avalos-Martinez stipulated that he is a citizen and national of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-10973

Mexico, that he was deported from the United States on July 11, 2006, and that he illegally reentered the United States prior to December 30, 2010, the date on which he was apprehended by federal agents. The criminal complaint for the crime of illegal reentry states that Avalos-Martinez admitted that he had unlawfully reentered the United States "sometime in 2008." The indictment contains no allegation about the date of Avalos-Martinez's illegal reentry.

The presentence investigation report ("PSR") prepared by the probation office disclosed that Avalos-Martinez had previously pleaded guilty to the crimes of (1) assault causing bodily injury to a public servant discharging an official duty and (2) taking or attempting to take a weapon from a peace officer, both in violation of Texas law. The PSR stated that Avalos-Martinez had been stopped by police officers for a traffic violation and that he had fled the scene and been chased and wrestled to the ground by the officers, during which altercation Avalos-Martinez had punched one of the officers and attempted to remove the duty weapon of another officer. The PSR stated that Avalos-Martinez was sentenced to two years' imprisonment for the assault and one concurrent year of imprisonment for his attempt to take the officer's weapon.

The PSR assigned a base offense level of eight in accordance with section 2L1.2(a) of the United States Sentencing Guidelines Manual ("U.S.S.G."). The PSR recommended adding four levels because Avalos-Martinez had been deported after a conviction for a felony offense, which referred to his conviction for assault of a public servant. *See* U.S.S.G. § 2L1.2(b)(1)(D).

The Government objected to the PSR, arguing that instead of a mere four-level increase for a prior felony, Avalos-Martinez should receive a sixteen-level increase for having committed a crime of violence when he attempted to take the officer's duty weapon.[1] *See id.* at § 2L1.2(b)(1)(A)(ii). The district court

---

[1] The Government also argued that assault of a public servant qualifies as a crime of violence, an argument which it later abandoned.

No. 11-10973

sustained the Government's objection and applied the sixteen-level enhancement.

The PSR also assigned Avalos-Martinez four criminal history points based on his prior Texas convictions for driving while intoxicated and endangering a child. Avalos-Martinez had pleaded guilty to both of these offenses on February 14, 1997. For driving while intoxicated, Avalos-Martinez was sentenced to twenty-four months' probation, which probation was revoked on March 28, 2001, resulting in a sixty-day jail sentence. For endangering a child, Avalos-Martinez was sentenced to two years' imprisonment, but his imprisonment was suspended for a five-year probation period. His probation was revoked on May 28, 1999, and he was sentenced to one year of imprisonment. Avalos-Martinez raised no objection to this portion of the PSR.

Based on the recommendations in the PSR, the district court determined that Avalos-Martinez had a total offense level of twenty-one[2] and a category V criminal history, resulting in an advisory guidelines range of 70–87 months' imprisonment. *See id.* at ch. 5, pt. A. Having stated that it "d[id] not intend to impose a sentence above the guideline range determined to be applicable," the district court gave Avalos-Martinez a within-guidelines sentence of 72 months, followed by three years of supervised release. Avalos-Martinez timely appealed.

## II. DISCUSSION

### A. Crime-of-Violence Enhancement

The first argument that Avalos-Martinez makes on appeal is that the district court erred in applying a sixteen-level crime-of-violence enhancement for his conviction for attempting to take a weapon from a peace officer. This court

---

[2] This determination was based upon a base offense level of eight, *see* U.S.S.G. § 2L1.2(a), a sixteen-level enhancement for a prior conviction for a crime of violence, *see id.* at § 2L1.2(b)(1)(A)(ii), and a three-level reduction for acceptance of responsibility, *see id.* at § 3El.1.

reviews the district court's interpretation and application of the sentencing guidelines de novo, including the issue of whether a defendant's prior conviction qualifies as a crime of violence. *United States v. Hernandez-Galvan*, 632 F.3d 192, 196 (5th Cir. 2011). To determine whether an offense qualifies as a crime of violence, this court applies a categorical approach, examining the elements of the offense rather than the specific facts underlying the defendant's conviction. *United States v. Dominguez*, 479 F.3d 345, 347 (5th Cir. 2007).

Section 2L1.2(b)(1)(A)(ii) of the sentencing guidelines provides that a defendant's offense level will be increased by sixteen if he was previously deported after having committed a "crime of violence" that results in criminal history points. An offense is classified as a crime of violence if it is one of several enumerated offenses,[3] or if it is "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* cmt. 1(B)(iii). Thus, the dispositive issue is whether the crime of attempting to take the weapon of a peace officer has as an element the use, attempted use, or threatened use of physical force against another person.

At the time of Avalos-Martinez's conviction, the offense was defined as follows:[4]

> § 38.14. Taking or Attempting to Take Weapon From Peace Officer, Parole Officer, or Community Supervision and Corrections Department Officer
>
> . . .

---

[3] Neither party argues that Avalos-Martinez committed one of the enumerated crime-of-violence offenses.

[4] Avalos-Martinez was convicted in June 2005. For the purposes of determining whether an offense is a crime of violence, we look to the version of the statute in effect at the time of the defendant's conviction. *United States v. Herrera*, 647 F.3d 172, 176 n.3 (5th Cir. 2011).

No. 11-10973

(b) A person commits an offense if the person intentionally or knowingly *and with force* takes or attempts to take from a peace officer . . . the officer's firearm, nightstick, or personal protection chemical dispensing device with the intention of harming the officer or a third person.

Tex. Penal Code § 38.14 (2005) (emphasis added).  Texas courts have distilled this offense to the following elements:

(1) Intentionally or knowingly;
(2) With force;
(3) Take or attempt to take;
(4) Peace officer's firearm;
(5) From a peace officer;
(6) With intent to harm officer or third person.

*Jackson v. State*, 993 S.W.2d 162, 166 (Tex. App.—Eastland 1992, no pet.).

Neither party disputes that force is an element of the crime.  Nevertheless, Avalos-Martinez argues that the element of force encompasses not only force directed against a person, but also force directed against property.  He argues that if an officer's firearm were locked inside a patrol car, someone could violate this statute by breaking into the patrol car to steal the firearm because that person would have taken the firearm through the use of force directed against the property of the patrol car.  Because he believes that the statute could be violated through such conduct, Avalos-Martinez argues that the offense does not have as a required element the use of force *against a person*, and that it therefore is not a crime of violence.

We find Avalos-Martinez's argument unpersuasive.  While we do not argue with his contention that the word "force" is capable of referring to force against property, we disagree that the word carries such a broad meaning in the context of this statute.  The statute outlaws using force to take a firearm *from an officer* with the intention of harming that officer or a third person.  This language indicates that the harm that the statute seeks to prevent is the danger created when someone takes a firearm from an officer's actual possession, stripping the

officer of the means to protect himself and others while giving the wrongdoer the power to use that weapon against the officer or others. *See United States v. Herrera*, 375 F.3d 399, 405 (6th Cir. 2004) ("The perpetrator who tries to gain possession of an officer's gun is not ordinarily a mere thief, trying to make off with the firearm, but more often is trying to gain a tactical advantage over the officer in a confrontational situation."). In this context, the plain meaning of "force" is force directed against the officer in possession of the weapon.[5]

A further problem with Avalos-Martinez's proposed interpretation is that it renders the "from an officer" element mere surplusage. *See Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex. 2000) ("[W]e give effect to all words of a statute, and, if possible, do not treat any statutory language as mere surplusage."). If the statute were intended to criminalize the conduct of one who uses force against property to take a weapon in an officer's constructive, as opposed to actual, possession, it could accomplish that objective with the following elements: intentionally or knowingly; with force; take or attempt to take; a peace officer's firearm; with intent to harm the officer or a third person. The way to give meaning to the "from an officer" element is to interpret the statute to criminalize the taking of a weapon from an officer in actual possession of that weapon. Once the statute is interpreted in this fashion, Avalos-Martinez's hypothetical falls apart; the force that would be used to take a weapon from an officer's actual possession is force against another person.

Of course, our interpretation of this Texas statute would be trumped by a contrary interpretation by Texas courts. However, our interpretation is buttressed by Texas cases applying the statute. The Government has presented

---

[5] Our conclusion is bolstered by the fact that the weapons mentioned in the statute—firearm, nightstick, personal protection chemical dispensing device—are all typically worn on a police officer's belt, and to take such weapons from an officer's belt would necessarily entail the use of force against that officer.

many cases in which section 38.14 was violated by conduct involving force directed against an officer. *See, e.g.*, *Chadwick v. Texas*, 277 S.W.3d 99, 101–02 (Tex. App.—Austin 2009, pet. granted) (defendant attempted to remove the officer's gun from its holster during a struggle), *aff'd*, *Chadwick v. Texas*, 309 S.W.3d 558 (Tex. Crim. App. 2010); *Hernandez v. Texas*, 903 S.W.2d 109, 112 (Tex. App.—Fort Worth 1995, pet. ref'd) (same); *Jackson*, 993 S.W.2d at 164 (same). Avalos-Martinez has failed to present any case applying the statute in which force was directed against property rather than against a person. He has also failed to present any case wherein a Texas court accepted his interpretation of "force." In the absence of case law supporting the interpretation proposed by Avalos-Martinez, we must rest on our interpretation of the plain language of the statute, which leads us to the conclusion that "force" means force against people, not property. Therefore, we conclude that the crime of attempting to take a weapon from a peace officer has the use of force against a person as a necessary element, and that it qualifies as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A)(ii). The district court did not err in applying the sixteen-level enhancement.

## B. Criminal History Points

The second argument that Avalos-Martinez makes on appeal is that the district court erred in assigning criminal history points to two of his prior convictions that occurred more than ten years prior to the instant offense and that resulted in less than one year and one month of imprisonment. Avalos-Martinez failed to make this objection before the district court and thus he acknowledges that our review is for plain error. *See United States v. Espinoza*, 677 F.3d 730, 735 (5th Cir. 2012). To show plain error, Avalos-Martinez must show (1) an error (2) that was clear or obvious (3) that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). A sentencing error affected a defendant's substantial rights if there is a "reasonable probability

that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence." *United States v. John*, 597 F.3d 263, 285 (5th Cir. 2010) (internal quotation mark omitted).  If Avalos-Martinez establishes plain error, we have the discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at 135 (internal quotation marks omitted).

Section 4A1.2(e) of the sentencing guidelines provides that a prior sentence imposed more than ten years before the commencement of the instant offense is not to be counted toward a defendant's criminal history unless it was a sentence of imprisonment exceeding one year and one month.  U.S.S.G. § 4A1.2(e)(1)–(3).  The two prior sentences at issue were imposed on February 14, 1997, and the "commencement of the instant offense"—i.e., the moment that Avalos-Martinez illegally reentered the United States—occurred "sometime in 2008"; thus, the prior sentences were imposed more than ten years before the commencement of the instant offense and should have been counted only if they were sentences of imprisonment exceeding one year and one day.  However, both were sentences of probation, and although both were revoked, neither revocation resulted in a sentence of imprisonment exceeding one year and one day.  It was therefore clear error to assign criminal history points based on these sentences, and the Government concedes as much.  *See United States v. Arviso-Mata*, 442 F.3d 382, 385 (5th Cir. 2006).

This error resulted in Avalos-Martinez having four more criminal history points than he should have had, making his criminal history category V when it should have been category IV.  *See* U.S.S.G. ch. 5, pt. A.  Accordingly, the district court applied an advisory guidelines range of 70–87 months instead of the correct advisory guidelines range of 57–71 months.  Avalos-Martinez's sentence of 72 months exceeds the correct advisory guidelines range.  In addition, the district court had stated that it did not intend impose a sentence

No. 11-10973

above the applicable guidelines range.  Based on the district court's expressed intention and the fact that Avalos-Martinez's sentence exceeded the correct advisory guidelines range, the district court's error affected his substantial rights, which the Government also concedes.  *See United States v. Mudekunye*, 646 F.3d 281, 290 (5th Cir. 2011) (holding that a defendant's substantial rights had been affected when the correct and incorrect guidelines ranges overlapped, the defendant was sentenced above the correct guidelines range, and it was not apparent from the record that the defendant would have received an above-guidelines sentence).

The final issue we must decide is whether this error seriously affects the fairness, integrity or public reputation of judicial proceedings such that we should exercise our discretion to correct it.  The Government has expressed no position on whether we should exercise our discretion in this case.  We have noted that "[n]ot every error that increases a sentence need be corrected by a call upon plain error doctrine."  *United States v. Ellis*, 564 F.3d 370, 378 (5th Cir. 2009).  Instead, we look to "the degree of the error and the particular facts of the case" to determine whether to exercise our discretion.  *United States v. Davis*, 602 F.3d 643, 651 (5th Cir. 2010).

In this case, Avalos-Martinez received a 72-month sentence that exceeded the correct advisory guidelines range by one month.  Although he received probation for each of the convictions giving rise to the challenged criminal history points, his probation for each conviction was revoked.  In the case of the child endangerment conviction, his probation was revoked for several violations: failure to report for seventeen months, failure to pay supervision fees and court costs, failure to attend substance abuse treatment, failure to complete community service, and an arrest for evading arrest in connection with a reported assault.  His revocation sentence of one year fell just short of the sentence required for the conviction to be properly counted.  Considering the

degree to which his sentence exceeds the correct guidelines range and the facts surrounding these convictions, we decline to exercise our discretion to correct the error in Avalos-Martinez's sentence.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.