# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

────────────

No. 15-40544

────────────

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

VICTOR EDUARDO HERNANDEZ-MONTES,

Defendant–Appellant.

────────────────

Appeal from the United States District Court
for the Southern District of Texas

────────────────

Before SMITH, BARKSDALE, and COSTA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Victor Hernandez-Montes contends his Florida conviction of attempted second-degree murder cannot be the basis of a sixteen-level crime-of-violence ("COV") sentence enhancement. We agree and therefore vacate and remand for resentencing.

I.

In 1995, a friend drove Hernandez-Montes to a residence where Robert

No. 15-40544

Olivares, Juan Gomez, and Rommel Villarreal were present. Hernandez-Montes remained in the car, exchanged words with the three, and opened fire on them. A Florida grand jury indicted Hernandez-Montes for attempted second-degree murder:

> VICTOR EDUARDO HERNANDEZ . . . did unlawfully and feloniously attempt to commit a felony, to wit: Murder in the Second Degree, upon [[Rommel Villareal (Count 3)] [Robert Olivares (Count 4)] [Juan Gomez (Count 5)]], and in furtherance thereof, the defendant did by an act imminently dangerous to another, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual, attempt to kill [Rommel Villareal] [Robert Olivares] [Juan Gomez], a human being, by shooting [Rommel Villareal] [Robert Olivares] [Juan Gomez] . . . .

Florida convicted Hernandez-Montes of "Attempted Second Degree Murder With A Weapon" in violation of Florida Statutes §§ 782.04(2) (defining second-degree murder),[1] 777.04(1) (defining attempt),[2] and 775.087 (establishing sentence).[3]

In 2014, Hernandez-Montes pleaded guilty to illegal re-entry in violation of 8 U.S.C. § 1326(a) and (b).[4] The Presentence Investigation Report ("PSR")

---

[1] "The unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, although without any premeditated design to effect the death of any particular individual, is murder in the second degree and constitutes a felony of the first degree, punishable by imprisonment for a term of years not exceeding life or as provided in s. 775.082, s. 775.083, or s. 775.084." FLA. STAT. § 782.04(2) (2016). The current version was also in effect in 1995.

[2] "A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt . . . ." FLA. STAT. § 777.04(1) (2016). The current version was also in effect in 1995.

[3] In relevant part, § 775.087 provided, "Any person who is convicted of . . . [a]ny murder . . . or any attempt to commit the aforementioned crimes . . . and who had in his possession a firearm . . . shall be sentenced to a minimum term of imprisonment of 3 calendar years." FLA. STAT. § 775.087 (1995).

[4] "In general. Subject to subsection (b), any alien who—(1) has been . . . deported . . . and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application

recommended 70–87 months' imprisonment based on a total offense level of 21 and Criminal History Category V.[5] Violations of § 1326 confer a base offense level of 8.[6] That offense level increases, however, if the defendant has been deported after committing a COV.[7] The PSR applied a sixteen-level enhancement for the 1996 conviction of attempted second-degree murder and a three-point reduction for acceptance of responsibility.[8]

The district court, over Hernandez-Montes's written and oral objections that the Florida attempt statute was too broad to be the basis of a COV enhancement, adopted the PSR's recommendations. The government recommended a sentence at the lower end of the 70–87-month range, but Hernandez-Montes requested a downward variance and a sentence of 37 months. The court granted the variance but sentenced Hernandez-Montes to 48 months, reasoning that "a sentence within the guideline would just be greater than necessary to impose an appropriate sentence" and that the sentence was "sufficient but not greater than necessary to impose an appropriate sentence."

---

for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both." 8 U.S.C. § 1326(a). Such an alien faces twenty years' imprisonment if the deportation follows an "aggravated felony." 8 U.S.C. § 1326(b)(2).

[5] The criminal-history-category determination, which Hernandez-Montes does not contest, is based on Hernandez-Montes's convictions of being found in the United States after a previous deportation, illegal re-entry, possession of cocaine, and attempted second-degree murder. Those convictions yielded twelve criminal history points, yielding Criminal History Category V.

[6] *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2L1.2(a) (2014).

[7] "Apply the Greatest: If the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a [COV,] . . . [then] increase by 16 levels if the conviction receives criminal history points under Chapter Four . . . . ." U.S.S.G. § 2L1.2(b)(1)(A)(ii).

[8] *See* U.S.S.G. § 3E1.1(a) and (b) (authorizing reductions for acceptance of responsibility).

No. 15-40544

II.

We analyze COV enhancements under a familiar test called the "Crime of Violence Framework." *United States v. Hernandez-Rodriguez*, 788 F.3d 193, 195 (5th Cir. 2015). Under the COV framework and the guidelines, a conviction may be a COV in one of two ways: first, if it qualifies as any one of a number of "enumerated offenses," including murder, *see* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii)[9]; second, if it is an offense "that has as an element the use, attempted use, or threatened use of physical force against the person of another," *see id.*[10] The guidelines also treat a conviction of an attempt to commit a COV as a COV itself.[11]

Within the COV framework, we assess whether a conviction is a COV under either prong using slightly different methodologies:

> Our two methodologies are both iterations of the elements-based categorical approach set forth in *Taylor*[12] and its progeny, with each looking to different sources of guidance. Under the "enumerated offense" prong, we conduct a "common-sense" categorical approach, looking to various sources—such as "the Model Penal Code, the LaFave and Scott treatises, modern state codes, and dictionary definitions"—to define each crime by its "generic, contemporary meaning." Under the "use of force" prong, we analyze whether the offense has as an element the use, attempted use, or threatened use of physical force. . . . Under both approaches, we determine the elements to which a defendant pleaded guilty by analyzing the statutory definition of the offense, not the defendant's underlying conduct.

*United States v. Herrera-Alvarez*, 753 F.3d 132, 137–38 (5th Cir. 2014) (citations omitted).

---

[9] The "enumerated offense" prong of the COV framework.

[10] The "use of force" prong of the COV framework.

[11] "Aiding and Abetting, Conspiracies, and Attempts. Prior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and attempting, to commit such offenses." U.S.S.G. § 2L1.2 cmt. n.5.

[12] *Taylor v. United States*, 495 U.S. 575 (1990).

No. 15-40544

Under the enumerated-offense prong, "we compare the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime . . . ." *United States v. Pascacio-Rodriguez*, 749 F.3d 353, 358 (5th Cir. 2014) (internal quotations omitted).[13]  If the elements of the conviction are narrower than or coterminous with the generic meaning, the COV enhancement is valid. *Hernandez-Rodriguez*, 788 F.3d at 195–96.

When the elements of the conviction are facially broader than the generic meaning, the defendant still must show a "realistic probability"—rather than "a mere theoretical possibility"—that his "statute of conviction would in fact punish conduct outside of the offense's ordinary meaning." *United States v. Garcia-Figueroa*, 753 F.3d 179, 187 (5th Cir. 2014) (quotations omitted).  To establish a "realistic probability," the defendant "must at least point to his own case or other cases in which the state courts in fact did apply the statute" to conduct not encompassed by the generic meaning. *Id.* (quotations omitted).  If he shows that the statute of conviction in fact applies to conduct broader than the generic meaning, then "the conviction is not a [COV] as a matter of law." *Hernandez-Rodriguez*, 788 F.3d at 196 (quotations omitted).

## A.

There is a threshold issue regarding the standard of review, because there is some ambiguity as to how to characterize Hernandez-Montes's prior conviction.  Hernandez-Montes frames the issue on appeal around his actual Florida conviction for attempted second-degree murder:  "Mr. Hernandez-Montes challenges the district court's application of the 16-level '[COV]' enhancement on the basis of his 1996 Florida convictions for *attempted second-*

---

[13] All agree that in Florida, attempted second-degree murder does not qualify as a COV under the use-of-force prong.

*degree murder*, which did not require proof that he acted with the specific intent to kill." (Emphasis added.)  He claims that that conviction is broader than its generic counterpart and thus cannot serve as the basis for a COV enhancement.

We usually review *de novo* such a claim that the district court committed procedural error by mischaracterizing a past conviction as a COV.  *See United States v. Rodriguez*, 711 F.3d 541, 547–48 (5th Cir. 2013) (en banc).  But we review only for plain error "[w]hen a defendant objects to his sentence on grounds different from those raised on appeal." *United States v. Garcia-Perez*, 779 F.3d 278, 281 (5th Cir. 2015).  The government seeks plain-error review because Hernandez-Montes characterized his objection differently before the district court, where he claimed Florida's "attempt" was broader than generic attempt.[14]  He contends *de novo* review is appropriate because his objections alerted the district court to the nature of his arguments.  His objections could have been clearer, but we agree he preserved error.

To preserve the issue for appeal, "the basis for objection presented below [must give] the district court the opportunity to address the gravamen of the argument presented on appeal." *Id.* at 281–82 (quotations omitted).  The objection must, in other words, "be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *Id.* at 282 (quoting *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009)).  Key is whether the objection is specific enough to allow the court to take evidence and receive argument on the issue.  *United States v. Maldonado*, 42

---

[14] The government maintains that Hernandez-Montes denied the district court the opportunity to correct the error, because his counsel mistakenly indicated that precedent foreclosed the objection.  The government points to no case, and we have discovered none, in which a defendant's mistaken belief that precedent forecloses his objection prevents the district court from having the opportunity to review that objection.

F.3d 906, 912 (5th Cir. 1995).

Hernandez-Montes lodged both written and oral objections to the COV enhancement. In his written objections, he focused on the breadth of Florida's attempt statute, claiming it was "too broad to constitute [generic] 'attempt' under U.S.S.G. § 2L1.2(b)(1)." He pressed this point, however, by reference to the underlying offense of second-degree murder. He also alerted the district court to his contention on appeal (that Florida's attempt statute interacts with Florida's second-degree murder statute in a way that precludes it from serving as the basis of a COV enhancement) by citing to and discussing Justice Harding's dissent in *Brown v. State*, 790 So. 2d 389, 394 (Fla. 2000).

The majority in *Brown* affirmatively answered the question, "Does the crime of attempted second degree murder exist in Florida?" *Id.* at 389–90. It reasoned,

> Although the crime of attempt generally requires proof of a specific intent to commit the crime plus an overt act in furtherance of that intent, . . . "[i]f the state is not required to show specific intent to successfully prosecute the completed crime, it will not be required to show specific intent to successfully prosecute an attempt to commit that crime."

*Id.* (quoting *State v. Brady*, 745 So. 2d 954, 957 (Fla. 1999)). Though Hernandez-Montes referred specifically to Florida's attempt statute, a perusal of *Brown* reveals that the attempt statute's interaction with the underlying offense was critical to dealing with Hernandez-Montes's objection.

Moreover, as Hernandez-Montes noted in his written objections, Justice Harding criticized Florida's attempt definition as being out of step with the "overwhelming majority of jurisdictions in this country." *Id.* at 393–94. Justice Harding also emphasized the interaction between the attempt statute and the underlying offense:

> In light of the fact that this State's classification of the crime of

7

attempt is contrary to the overwhelming majority of jurisdictions in this country, I question the reasons that this Court initially relied upon to formulate the *Gentry*[15] test. The *Gentry* court argued that the State should not be required to prove an intent for a successful prosecution of an attempt to commit a crime when no such degree of proof is necessary for successful prosecution of the completed crime. However, there is a substantial distinction between a completed crime and an attempt.

*Id.* Shortly thereafter, Justice Harding specifically concludes "it is illogical to have the crime of attempted second-degree murder because it is impossible to intend to commit an act of recklessness." *Id.* at 395. Thus, a review of the dissent upon which Hernandez-Montes explicitly relied would alert the district court to his argument about the interaction between Florida's attempt and second-degree murder offenses.

Finally, Hernandez-Montes objected at the sentencing hearing. His counsel argued,

I have the written objection to submit, but basically, in short, Mr. Hernandez has a Florida attempted second degree murder conviction and the Fifth Circuit has recognized that the Florida attempt statute is theoretically broader than the generic definition of attempt. But in a case last year defendant [sic] failed to show that there was a reasonable probability that Florida was going to charge it in that broader way.

So, it is foreclosed but there's a pending cert petition in that case challenging the reasonable probability test. *So, I do want to preserve his objection that the Florida attempt statute is too broad and so, even though it appears to be – or it is foreclosed now, he does believe that the Florida attempted second degree murder statute doesn't have a categorical match or it's too broad.*

(Emphasis added.) Though he did not specifically argue that Florida's attempted second-degree murder should not qualify as an "enumerated offense," Hernandez-Montes used similar language and alerted the court to his theory

---

[15] *Gentry v. State*, 437 So. 2d 1097 (Fla. 1983).

No. 15-40544

that that offense is too broad to qualify as an enumerated offense.[16]

The court overruled the objection without further discussion but allowed Hernandez-Montes to argue for a variance from the guidelines range. In doing so, Hernandez-Montes again expressly addressed the Florida attempted-second-degree murder offense and its problematic role as the basis for his COV enhancement:

> His plus 16 here comes from this 1995 arrest and this 20-year old conviction was – he was 17 at the time. He was indicted as a juvenile, but the 1996 conviction appears to be an adult conviction.

> But in my research on the Florida statute, *Supreme Court of Florida Justice* [sic] *actually pointed out that the Florida attempted murder statute requires lesser culpability. It require* [sic] *general intent, which is different from almost every single jurisdiction in the U.S., which requires specific intent. And this attempted depraved mind murder doesn't actually exist in most jurisdictions.*

> So, he was 17. He was convicted under a kind of an abhorrent stat-ute in Florida 20 years ago and it's giving him a big bump in his guidelines now.

(Emphasis added.)

Hernandez-Montes's objections could have been clearer, but they did sufficiently apprise the court of the "gravamen" or "essence" of the claim he brings on appeal. *Garcia-Perez*, 779 F.3d at 281–82. The repeated assertions that Florida's attempt statute is broader than the generic definition of attempt did veer somewhat from Hernandez-Montes's arguments on appeal, but they were accompanied by repeated references to the interaction between the attempt offense and the underlying second-degree-murder offense. Moreover, Hernandez-Montes's counsel's references to *Brown* and that court's extended

---

[16] *Cf. United States v. Ocana*, 204 F.3d 585, 589 n.2 (5th Cir. 2000) (forgiving defen-dant's failure to base her objection on a specific guidelines section in part because she used "identical terminology").

9

No. 15-40544

discussion of Florida's attempted-second-degree murder offense were sufficient to allow the district court to take more evidence or argument on the issue. *See Maldonado*, 42 F.3d at 912.

B.

Hernandez-Montes urges that his conviction of attempted second-degree murder does not qualify as an enumerated offense under Section 2L1.2 cmt. n.1(B)(iii).  He reasons essentially that generic, contemporary attempted murder includes a *mens rea* of specific intent to kill, and Florida's attempted-second-degree murder law does not require specific intent to kill, so the crime is too broad to constitute the enumerated offense of attempted murder.

Again, under the enumerated-offense prong of the COV framework, we "apply a common sense approach that looks to the generic, contemporary meaning of an offense listed in § 2L1.2 to assess whether the offense of conviction amounts to that enumerated offense." *Hernandez-Rodriguez*, 788 F.3d at 195, 196 n.6 (internal quotations omitted).  To discern the generic meaning, we may rely on various sources, such as state and federal statutes, state and federal common law, the Model Penal Code, criminal law treatises, the United States Code of Military Justice, and dictionaries.  *Id.* at 195–96; *Pascacio-Rodriguez*, 749 F.3d at 359.

Here, attempted murder is the enumerated offense. *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) & n.5.  Hernandez-Montes marshals an impressive array of authority that the generic, contemporary meaning of attempted murder includes a specific intent to kill.  For example, he lists several treatises,[17] a

---

[17] 4 WHARTON'S CRIMINAL LAW § 695 (15th ed. 2015) ("Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill."); *see also* ROLLIN M. PERKINS & RONALD M. BOYCE, CRIMINAL LAW 637 (3d ed. 1982); WILLIAM L. CLARK & WILLIAM L. MARSHALL, A TREATISE ON THE LAW OF CRIMES § 4.08 (7th ed. 1967); WAYNE R. LAFAVE & AUSTIN W. SCOTT, SUBSTANTIVE CRIMINAL LAW § 11.3(a)

No. 15-40544

Supreme Court case,[18] other federal cases,[19] a dictionary definition,[20] and thirty-eight states[21] that require proof of a specific intent to kill for a conviction

---

(1986).

[18] *Braxton v. United States*, 500 U.S. 344, 351 n.* (1990) ("Since the statute does not specify the elements of 'attempt to kill,' they are those required for an 'attempt' at common law, [] which include a specific intent to commit the unlawful act.  Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill." (citations omitted) (some quotations omitted)).

[19] *See, e.g.*, *United States v. Perez*, 43 F.3d 1131, 1139–40 (7th Cir. 1994) (reversing a conviction under 18 U.S.C. § 113(a) "because the 'murder with malice aforethought' instruction did not require proof of specific intent, but rather . . . that reckless and wanton conduct would suffice"); *United States v. Kwong*, 14 F.3d 189, 195–96 (2d Cir. 1994) (construing *Braxton*) ("Although the evidence of the defendant's guilt to attempted murder is not insufficient as a matter of law, the charge was fatally tainted by an instruction that reckless indifference might serve as a substitute for proof of a specific intent to kill."); *United States v. Roa*, 12 M.J. 210, 212 (C.M.A. 1982) ("By way of analogy, despite the provisions of Article 118(2), whereunder intent to inflict grievous bodily harm will allow conviction for murder, that intent will not suffice to sustain findings of guilty of attempted murder or assault with intent to murder.").

[20] *Cf. Attempt*, BLACK'S LAW DICTIONARY (10th ed. 2014) ("2. *Criminal law*.  An overt act that is done with the intent to commit a crime but that falls short of completing the crime.").

[21] *See Minshew v. State*, 594 So. 2d 703, 704 (Ala. Crim. App. 1991); *Huitt v. State*, 678 P.2d 415, 419 (Alaska Ct. App. 1984); *People v. Smith*, 124 P.3d 730, 740 (Cal. 2005); *State v. DeBarros*, 755 A.2d 303, 309 (Conn. App. Ct. 2000); *State v. Buckley*, 953 P.2d 604, 605 (Idaho 1998); *People v. Lopez*, 655 N.E.2d 864, 866 (Ill. 1995); *Rosales v. State*, 23 N.E.3d 8, 12 (Ind. 2015); *State v. Kehoe*, 804 N.W.2d 302, 312–13 (Iowa 2011); *State v. Shannon*, 905 P.2d 649, 652–53 (Kan. 1995) (holding that attempted second-degree murder does not exist because "specific intent to commit an unintentional killing . . . is . . . impossible"); *Spicer v. Commonwealth*, 442 S.W.3d 26, 30–31 (Ky. 2014); *State v. Freeman*, 2010–45,127 (La. App. 2 Cir. 4/14/10); 34 So. 3d 541, 545; *State v. Poulliot*, 726 A.2d 210, 213 (Me. 1999); *State v. Earp*, 571 A.2d 1227, 1231 (Md. 1990); *Commonwealth v. Maloney*, 506 N.E.2d 1147, 1149 (Mass. 1987); *People v. Hall*, 436 N.W.2d 446, 448 (Mich. Ct. App. 1989); *State v. Schmitz*, 559 N.W.2d 701, 704 (Minn. Ct. App. 1997); *McGowan v. State*, 541 So. 2d 1027, 1030 (Miss. 1989); *State v. Clawson*, 781 P.2d 267, 271–72 (Mont. 1989); *State v. Smith*, 811 N.W.2d 720, 721–23 (Neb. Ct. App. 2012) (differentiating between "attempted sudden quarrel manslaughter," which does not require intent to kill, and attempted second-degree murder which does); *Keys v. State*, 766 P.2d 270, 272 (Nev. 1988); *State v. Allen*, 514 A.2d 1263, 1267 (N.H. 1986); *State v. Rhett*, 601 A.2d 689, 692 (N.J. 1992); *State v. Carrasco*, 172 P.3d 611, 615 (N.M. Ct. App. 2007); *People v. Campbell*, 532 N.E.2d 86, 88 (N.Y. 1988); *State v. Coble*, 527 S.E.2d 45, 48 (N.C. 2000); *Dominguez v. State*, 840 N.W.2d 596, 603 (N.D. 2013); *State v. Nolan*, 25 N.E.3d 1016, 1018 (Ohio 2014); *Messick v. State*, 84 P.3d 757, 761–62 & nn.13–18 (Okla. Crim. App. 2004) (discussing attempt statutes); *State v. Smith*, 534 P.2d 1180, 1184 (Or. Ct. App. 1975); *Commonwealth v. Geathers*, 847 A.2d 730, 734 (Pa. Super. Ct. 2004);

11

of attempted murder. That evidence, drawn from an overwhelming majority of U.S. jurisdictions, is sufficient to establish that attempted murder's generic, contemporary meaning includes a *mens rea* of specific intent to kill.

Florida's attempted-second-degree murder offense is facially broader than the generic offense. The attempt statute criminalizes "any act toward the commission of [an] offense" without regard to any specific intent to commit the underlying crime. FLA. STAT. § 777.04(1). Florida's second-degree-murder statute punishes the "unlawful killing of a human being, when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life." FLA. STAT. § 782.04(2). Florida makes clear that acts evincing a depraved mind regardless of human life do not equate to the *mens rea* of specific intent to kill.[22] Thus, reading the statutes together, Florida may punish conduct as attempted second-degree murder without establishing proof of a specific intent to kill.[23] Moreover, Florida's highest court has explicated the elements of attempted second-degree murder, from which a specific intent to kill is absent.[24]

---

*State v. King*, 772 S.E.2d 189, 193 (S.C. Ct. App. 2015); *State v. Lyerla*, 424 N.W.2d 908, 913 (S.D. 1988); *Hughen v. State*, 265 S.W.3d 473, 485 (Tex. App.—Texarkana 2008, pet. granted), *aff'd*, 297 S.W.3d 330 (Tex. Crim. App. 2009); *State v. Casey*, 82 P.3d 1106, 1117 n.11 (Utah 2003); *Baldwin v. Commonwealth*, 645 S.E.2d 433, 435 (Va. 2007); *State v. Dunbar*, 817 P.2d 1360, 1363 (Wash. 1991); *State v. Jenkins*, 443 S.E.2d 244, 249 (W. Va. 1994) (noting that "intent to kill . . . is a required element of both first and second degree murder"); *State v. Melvin*, 181 N.W.2d 490, 492 (Wis. 1970).

[22] *See State v. Montgomery*, 39 So. 3d 252, 255–56 (Fla. 2010) (discussing *mens rea* of second-degree murder before concluding "second-degree murder . . . does not require proof that the defendant intended to kill the victim").

[23] *Brown*, 790 So. 2d at 389–90; *see also Gentry*, 437 So. 2d at 1099 ("If the state is not required to show specific intent to successfully prosecute the completed crime, it will not be required to show specific intent to successfully prosecute an attempt to commit that crime.").

[24] *See Coicou v. State*, 39 So. 3d 237, 241 (Fla. 2010) ("[Florida's] attempted second-degree murder has two elements: (1) the defendant intentionally committed an act that could have resulted, but did not result, in the death of someone, and (2) the act was imminently dangerous to another and *demonstrated a depraved mind without regard for human life*."

The inquiry does not end there, however, because, as noted above, Hernandez-Montes must also show a "realistic probability" that Florida will enforce its theoretically broader definition to conduct outside that punished by generic attempted murder. He may do so by pointing to "his own case or other cases in which the state courts in fact did apply the statute" to conduct not encompassed by the generic meaning. *Garcia-Figueroa*, 753 F.3d at 187 (quotations omitted). He has done so by directing us to *State v. Brady*, 745 So. 2d 954, 955 (Fla. 1999).

In *Brady*, the eponymous defendant exchanged words with and shot at his intended victim inside a nightclub. Brady missed his intended victim, hitting the intended victim's girlfriend in the hand instead. Florida convicted him on two counts of attempted second-degree murder—one relating to the intended victim and one to the girlfriend actually shot. Brady appealed, and an intermediate court reduced his conviction as to the girlfriend to aggravated battery because it thought "that transferred intent could not be used to convict Brady of attempted murder of [her] where there was no evidence of intent to kill her."

The Florida Supreme Court reinstated Brady's convictions of attempted second-degree murder, reasoning that the conviction "does not require proof of the specific intent to commit the underlying act (i.e., murder)" and that "a jury could reasonably conclude that Brady intentionally committed an act imminently dangerous to others . . . without regard for human life which would have

---

(emphasis added) (quotations omitted). Although Florida requires that the defendant "intentionally" commit the act, that requirement is best read as "general intent" requiring that the defendant commit the act consciously and voluntarily, instead of reflexively. *See, e.g., Holloway v. McElroy*, 632 F.2d 605, 618 n.26 (5th Cir. 1980) ("By 'general intent' we mean intent in the sense that a person intends the consequences of his voluntary physical actions—e.g., an 'intentional' shooting in self-defense."), *overruled on other grounds by Mason v. Balkcom*, 669 F.2d 222, 227 (5th Cir. Unit B 1982).

resulted in death had the bullet fatally struck" someone. *Id.* at 957–58. The court summed up its reasoning:

> Of course, as we have noted above, we have not required specific intent to be proven for attempted second-degree murder. *See Gentry*, 437 So. 2d at 1097. Thus, it appears that the jury convicted Brady on two counts of attempted second-degree murder without resort to the doctrine of transferred intent. Under our analysis and holding in *Gentry* that would be lawful.

*Id.* at 958. Although it was undisputed that Brady never intended to kill the bystander-girlfriend, Florida's highest court reinstated his conviction of attempted second-degree murder as to her.

Hernandez has shown a "realistic probability" that Florida's attempted-second-degree murder law "punish[es] conduct outside of the offense's ordinary meaning" by pointing to "other cases in which the state courts in fact did apply the statute" to conduct not encompassed by the generic meaning. *Garcia-Figueroa*, 753 F.3d at 187 (quotations omitted). Thus, the offense does not qualify as an enumerated offense under Section 2L1.2 cmt. n.1(B)(iii) and may not serve as the basis of a COV enhancement.[25]

---

[25] We acknowledge that, in addition to the traditional COV framework, there appears to be a second method to analyze COV enhancements following *United States v. Rodriguez-Escareno*, 700 F.3d 751, 753 (5th Cir. 2012), and *Pascacio-Rodriguez*, 749 F.3d at 358, 366–67. In *Rodriguez-Escareno*, 700 F.3d at 753–54, we concluded a federal conviction of conspiracy to distribute methamphetamines in violation of 21 U.S.C. § 846 could be the basis of an enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i)—which applies a sixteen-level enhancement for certain "drug trafficking offenses"—without resorting to an "enumerated offense" analysis. Because Section 2L1.2 cmt. n.1(B)(iv) defined a "drug trafficking offense" to include distribution of controlled substances, and Section 2L1.2 cmt. n.5 treated conspiracies to commit drug trafficking offenses as drug-trafficking offenses, "[t]here [was] no reason to search outside the Guidelines for a definition of 'conspiracy' applicable to th[e] enhancement." *Id.* at 754. We concluded "the Guidelines themselves, reasonably interpreted, provide that a conviction of the federal drug trafficking offense will qualify for the enhancement, and so will the federal crime of conspiring to commit such an offense." *Id.*

*Rodriguez-Escareno* "impl[ied] no position on the relevance of [its] reasoning to applying the enhancement to convictions for conspiracies to commit state-law offenses." *Id.* at 754 n.2. But *Pascacio-Rodriguez* extended *Rodriguez-Escareno*'s reasoning to a defendant's

No. 15-40544

III.

Hernandez-Montes maintains that, without the erroneous COV enhancement, he would be subject to at most an eight-level aggravated-felony enhancement under U.S.S.G. § 2L1.2(b)(1)(C), which would yield an offense level of thirteen and a guidelines range of 30–37 months. The government responds that any error was harmless because the court reasonably could have imposed the same sentence based on Hernandez-Montes's criminal history of gang affiliation and illegal re-entries.

"[T]he harmless error doctrine applies only if the proponent of the sentence convincingly demonstrates both (1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010). The government (the proponent of the sentence here) "must point to evidence in the record that will convince us that the district court had a particular sentence in mind and would

---

contention that his state-law conviction of conspiracy to commit murder did not qualify as an enumerated offense (because it did not require an overt act, but generic conspiracy to commit murder did) and could not be the basis of a COV enhancement. *Pascacio-Rodriguez*, 749 F.3d at 354. As in *Rodriguez-Escareno*, we concluded that Section 2L1.2 cmt. nn.1(B)(iii) & 5 plainly encompassed conspiracy to commit murder as a COV. *Id.* at 366. Key to our reasoning was the "context" of federal conspiracy statutes, many of which did not require overt acts and many of which punished very serious crimes. *Id.* (noting those conspiracy crimes without overt-act requirements "were undoubtedly intended by the Sentencing Commission to result in a 16-level enhancement"). Thus, "the language and context of § 2L1.2 indicate[d] that an overt act is not required for a conspiracy to commit murder," *id.* at 367–68, and it would be unnecessary to "search for a generic meaning of 'conspiracy' by employing" the COV framework, *id.* at 366–67.

This alternative analytical route is immaterial here, because the result in Hernandez-Montes's case would be the same under *Pascacio-Rodriguez*'s and *Rodriguez-Escareno*'s reasoning. The "context" of attempt law at the federal level and in the overwhelming majority of state jurisdictions does not include conflicting specific-intent requirements (unlike the context in *Pascacio-Rodriguez*). The context here thus suggests that "the Sentencing Commission . . . intended for [specific intent] to be an element of every [attempt] conviction" that serves as the basis of a COV enhancement. *See id.* at 358.

15

have imposed it, notwithstanding the error." *Id.* at 718 (quotations omitted). It is insufficient to point "to the record to hypothesize some other explanation that might render the sentence reasonable." *United States v. Rodriguez-Rodriguez*, 775 F.3d 706, 712 (5th Cir. 2015) (quotations omitted). Instead, the government "must show that the [sentence] the district court imposed was not influenced in any way by the erroneous Guideline calculation." *United States v. Ramos*, 739 F.3d 250, 253 (5th Cir. 2014).

The government has not proven that the district court would have imposed the same sentence regardless of the error. The court sentenced Hernandez-Montes to 48 months in part because the guidelines range of 70–87 months was too harsh. If the correct guidelines range were only 30–37 months, then it is unclear that the court would have imposed the same 48-month sentence. Though it referenced the 18 U.S.C. § 3553(a) factors and stated that the 48-month sentence was sufficient but not greater than necessary, the court did not indicate definitively that it would impose the same sentence regardless of a guidelines error. We have typically required such definite statements in order to find that the district court would have imposed the same sentence. *See, e.g.*, *United States v. Martinez-Flores*, 720 F.3d 293, 300–01 (5th Cir. 2013) (finding error where the district court "did not clearly state" whether it would have imposed the same sentence absent the erroneous guidelines range despite its reference to § 3553(a) factors and the defendant's criminal record and history of violence).[26]

---

[26] *See, e.g.*, *Rodriguez-Rodriguez*, 775 F.3d at 709 (finding harmless error where the district court justified its sentence by stating that "[t]he sentence I'm about to impose would be the same with or without the Guidelines"); *Ramos*, 739 F.3d at 253–54 (harmless error where district court relied on nature of offense and § 3553(a) factors to impose sentence; *United States v. Richardson*, 676 F.3d 491, 512 (5th Cir. 2012) (same where district court calculated multiple guideline ranges and stated it would impose the same sentence regardless of which was correct); *United States v. Bonilla*, 524 F.3d 647, 656 (5th Cir. 2008) (same

Additionally, the government misconceives its burden on harmless-error review.  It points to Hernandez-Montes's admittedly extensive criminal history, but it is not enough to rely on evidence that renders the sentence reasonable.  The government must point to evidence in the record that convincingly demonstrates the district court would impose the *same* sentence for the *same* reasons.  The government has not done so.

The judgment of sentence is VACATED, and this matter is REMANDED for resentencing.

---

where court stated it believed its range was correct but would apply the same sentence regardless).