# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20606

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

VICTOR HUGO QUINONEZ-SAA, also known as Victor Hugo Quinonez Saa, also known as Mario Walter Quinones,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CR-309

Before DAVIS, HAYNES, and DUNCAN, Circuit Judges.

PER CURIAM:*

Victor Hugo Quinonez-Saa appeals his sentence resulting from a guilty plea for being illegally in the United States after being deported subsequent to an aggravated felony conviction. Quinonez-Saa claims the district court plainly erred in concluding that his first-degree murder conviction was a "crime

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

of violence" under § 2L1.2(b)(1)(A)(ii) of the United States Sentencing Guidelines ("U.S.S.G"). Because any error was not plain, we AFFIRM.

## I. Background

Quinonez-Saa pleaded guilty to one count of being illegally in the United States after being deported subsequent to an aggravated felony conviction, in violation of 8 U.S.C. § 1326(a) and (b)(2). The 2014 Sentencing Guidelines in effect at the time added sixteen points to a defendant's base offense level if he illegally reentered or stayed in the United States after having previously committed a felony "crime of violence." *See* U.S.S.G § 2L1.2(b)(1)(A)(ii). The Probation Office concluded that Quinonez-Saa's prior state conviction for first-degree murder was a "crime of violence," and so it recommended increasing his offense level from 8 to 24.

Based on Quinonez-Saa's offense level and criminal history, the Sentencing Guidelines called for 46 to 57 months in prison.[1] *See* U.S.S.G., ch. 5, pt. A. The district court sentenced Quinonez-Saa to 42 months, which included credit for four months he already spent in custody. Quinonez-Saa did not object to the Probation Office's use of the "crime of violence" enhancement in calculating his Sentencing Guidelines range in its Presentence Investigation Report, or to the district court's application of the enhancement at sentencing. Quinonez-Saa now appeals his sentence, challenging the crime of violence enhancement.

## II. Standard of Review

Quinonez-Saa concedes, and the record confirms, that his appeal is subject to plain error review because he did not raise this issue in the district

---

[1] Quinonez-Saa's final offense level was 21, after he received three points for accepting responsibility. *See* U.S.S.G § 3E1.1(a), (b). He received three criminal history points for the state murder conviction and two criminal history points for committing the instant offense while on parole, resulting in a criminal history category of III. *See* U.S.S.G. § 4A1.1(a), (d).

court. *See United States v. Garcia-Perez*, 779 F.3d 278, 281–82 (5th Cir. 2015). To establish plain error, a defendant "must show (1) an error (2) that was clear or obvious (3) that affected his substantial rights." *See United States v. Avalos-Martinez*, 700 F.3d 148, 153 (5th Cir. 2012) (per curiam). To determine "whether an error is 'clear or obvious,' we look to the 'state of the law at the time of appeal,' and we must decide whether controlling circuit or Supreme Court precedent has reached the issue in question, or whether the legal question would be subject to 'reasonable dispute.'" *United States v. Scott*, 821 F.3d 562, 570–71 (5th Cir. 2016) (quoting *United States v. Fields*, 777 F.3d 799, 802 (5th Cir. 2015)). If the defendant establishes plain error, this court "ha[s] the discretion to correct the error if it 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Avalos-Martinez*, 700 F.3d at 153 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)); *see also Rosales-Mireles v. United States*, 2018 WL 3013806 *12 (U.S. Jun. 18, 2018) (No. 16-9493) (discussing plain error review and focusing on the discretionary fourth prong).

### III. Discussion

Quinonez-Saa argues the district court erred in classifying his Texas murder conviction as a "crime of violence." Under § 2L1.2(b)(1)(A)(ii), a conviction is a "crime of violence" if it is (1) one of the section's "enumerated offenses," or (2) "an offense 'that has as an element the use, attempted use, or threatened use of physical force against the person of another.'"[2] *United States v. Hernandez-Montes*, 831 F.3d 284, 288 (5th Cir. 2016) (quoting U.S.S.G. § 2L1.2 cmt. n.1(B)(iii)). For the first test, we start by determining the

---

[2] Quinonez-Saa argues that Texas's murder statute fails both tests, but we do not address the "use of physical force" test because, as discussed below, we conclude that the district court did not plainly err in concluding that Quinonez-Saa's state murder conviction is a crime of violence under the "enumerated offense[]" test.

"generic, contemporary meaning" of the relevant, enumerated offense. *Id.* (quoting *United States v. Herrera-Alvarez*, 753 F.3d 132, 137 (5th Cir. 2014)). In doing so, we "look[] to various sources—such as the Model Penal Code, the LaFave and Scott treatises, modern state codes, and dictionary definitions—to define each crime by its generic, contemporary meaning." *Id.* (internal quotation marks omitted) (quoting *Herrera-Alvarez*, 753 F.3d at 137–38). We then "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime." *Hernandez-Montes*, 831 F.3d at 289 (quoting *United States v. Pascacio-Rodriguez*, 749 F.3d 353, 358 (5th Cir. 2014)). If the elements are "narrower than or coterminous with the generic meaning," then we affirm application of the enhancement. *Id.* (citing *United States v. Hernandez-Rodriguez*, 788 F.3d 193, 195–96 (5th Cir. 2015)).

The Sentencing Guidelines specifically enumerate "murder" as a "crime of violence." *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). But Quinonez-Saa argues that Texas's murder statute allows a conviction for felony murder that is broader than generic felony murder, and therefore, Texas's definition of murder is plainly too broad to be "murder" as enumerated. Quinonez-Saa was convicted of first-degree murder in 1992 under Texas Penal Code § 19.02(a), which provided that someone committed the offense if he:

> (3) commits or attempts to commit a felony, other than
> . . . manslaughter, and in the course of and in
> furtherance of the commission or attempt, or in
> immediate flight from the commission or attempt, he
> commits or attempts to commit an act clearly
> dangerous to human life that causes the death of an
> individual.[3]

---

[3] The present version of Texas's murder statute criminalizes the same conduct under Texas Penal Code § 19.02(b).

No. 15-20606

Quinonez-Saa argues that the felony murder definition in § 19.02(a)(3) is too broad because (1) it allows a conviction based on any felony other than manslaughter that involves a dangerous act, whereas most jurisdictions list specific triggering felonies, and (2) Texas allows a conviction when the underlying felony is not independent from the homicide, whereas most states require an independent felonious purpose.[4]

Although we have decided what constitutes the generic offense of attempted murder, *see Hernandez-Montes*, 831 F.3d at 292–93, we have not done so for murder or felony murder, and neither has the Supreme Court. Given the lack of controlling precedent, we conclude that any error by the district court was not plain because (as explained below) the relevant sources indicate that whether Texas felony murder comports with the generic definition is "subject to reasonable dispute." *See Scott*, 821 F.3d at 570–71.

Texas limits felony murder to offenses where the defendant commits or attempts "an act clearly dangerous to human life" during or in furtherance of a felony, or in immediate flight, and the act kills someone. TEX. PENAL CODE § 19.02(a)(3) (1991). By comparison, the Model Penal Code defines murder as including homicides "committed recklessly under circumstances manifesting extreme indifference to the value of human life," and it presumes such recklessness and indifference if the homicide occurs during the commission, attempted commission, or flight from committing various enumerated felonies. MODEL PENAL CODE § 210.2(1)(b); *see also* 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 14.5(b) (3d ed. 2017) (discussing approaches to defining

---

[4] There is no "adequate judicial record evidence" indicating which subsection of § 19.02(a) Quinonez-Saa was convicted under. *See Shepard v. United States*, 544 U.S. 13, 16 (2005). Therefore, all three subsections must fit the generic definition of murder. *See United States v. Moreno-Florean*, 542 F.3d 445, 449 (5th Cir. 2008); *cf. Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016).

5

murder); *see also Felony-Murder Rule*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining the rule as "if a person dies during the course of and in furtherance of a specified type of felony—even in immediate flight from the scene . . . the death is considered a murder regardless of intent" and explaining that "[m]ost states restrict this rule to inherently dangerous felonies such as rape, arson, robbery, and burglary").  The only sister circuit to have considered this issue is the Third Circuit.  It concluded that "murder is generically defined as causing the death of another person either intentionally, during the commission of a dangerous felony, or through conduct evincing reckless and depraved indifference to serious dangers posed to human life."  *United States v. Marrero*, 743 F.3d 389, 401 (3d Cir. 2014).

We need not decide if the Texas felony murder statute is broader than generic murder.  Based on the foregoing relevant sources, *see Hernandez-Montes*, 831 F.3d at 288, we cannot say it is clear or obvious that Texas's felony murder rule is broader than generic felony murder.  The state's requirement of "an act clearly dangerous to human life" that causes someone's death arguably limits the rule to dangerous felonies and conduct showing extreme indifference to human life, which is the common element in each of the foregoing definitions.

AFFIRMED.